363 F.Supp. 837 (1973)
Reginald O. WALLACE, Plaintiff,
v.
DEBRON CORPORATION, a corporation, Defendant.
No. 73 C 318(1).
United States District Court, E. D. Missouri, E. D.
August 30, 1973.
Liberman, Baron & Goldstein, St. Louis, Mo., for plaintiff.
Frank N. Gundlach, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, Chief Judge.
This matter is pending before the Court on defendant's motion for summary judgment. The motion for summary judgment will be granted for failure to state a claim on which relief can be granted.
Plaintiff is a black man who was employed by Mississippi Valley Structural Company, now merged with Debron Corporation, until October 1971. In September 1971 he was garnisheed for the second time within a twelve-month period, a violation of company work rules, and was discharged. Plaintiff was the second employee discharged under this rule. The first was a white man. Plaintiff contends that this policy is a "racially discriminatory employment *838 practice" and a violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended, Equal Employment Opportunity Act of 1972, Pub.L. No. 92-261, 86 Stat. 103 (1972), and the Civil Rights Act of 1866, 1870, and 1871, 42 U.S.C. §§ 1981, 1983, and 1985. This Court has jurisdiction under section 706(f)(3) of the Act [42 U.S.C. § 2000e5(f)(3)], as amended, and 28 U.S.C. § 1343(3) and (4).
The claims of the plaintiff resting on 42 U.S.C. § 1983 are without merit. A claim under this statute must be derived from actions taken under "color of law", 42 U.S.C. § 1983. Such was not the case here, see e. g., United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966).
Likewise, a claim under 42 U.S.C. § 1985 must be based on the existence of a conspiracy, 42 U.S.C. § 1985. Such was not the case here, see, e. g., Dombrowsky v. Dowling, 459 F.2d 190 (7th Cir. 1972), and a conspiracy was neither alleged or proved.
The claims of the plaintiff under 42 U.S.C. § 1981 and 42 U.S.C. § 2000e also failed to state a claim since inequality or a racially discriminatory employment practice must exist to maintain a claim. "The philosophy behind [equal protection of the laws] is the philosophy behind the fair employment practice title." Cong.Rec., Vol. 110, p. 13080, June 9, 1964. 42 U.S.C. § 1981, on equal rights under the law, says:
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."
Thus, in this instance, if the treatment under this policy were the same for all races, on its face, in its application and effect, as it is for whites, then neither § 1981 or § 2000e would be violated.
It is clear that on its face the company policy does not discriminate. It was admitted in oral argument that the company policy was not applied discriminatorily. It is contended that absence of a racially-discriminatory intent does not matter. It is contended only that the policy is discriminatory in effect.
The plaintiff has relied on two cases extensively, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), and Johnson v. Pike Corporation of America, 332 F.Supp. 490 (D. C.1971). Griggs was a sweeping opinion of the Supreme Court ruling a non-job related employment test, without discriminatory intent violative of § 2000e because its effect was to exclude minorities whose educational opportunities were restricted under past and present discriminatory laws and conditions. Johnson took the language of the Griggs case one step further and said that a policy of discharging an employee for several garnishments was racially discriminatory in effect and, therefore, violative of § 2000e.
Since these decisions, the Supreme Court has further delineated the applicable standards in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1972). The petitioner, a black man, had participated in unlawful activities against McDonnell Douglas to protest alleged civil rights violations, and McDonnell refused on these grounds to hire him. The Court found a prima facie case of discrimination had been made and rebutted, but remanded to give petitioner a chance to show that the refusal to hire him was, in fact, based on discrimination, and the activities he had engaged in were only a pretext. The Court said that a showing that similar activities by whites were overlooked would be especially relevant. Both of these elements are missing in *839 this case. Also, the Court in McDonnell Douglas said:
". . . Griggs differs from the instant case in important respects. . . . Griggs was rightly concerned that childhood deficiencies in the education and background of minority citizens, resulting from forces beyond their control, not be allowed to work a cumulative and invidious burden on such citizens for the remainder of their lives. Id. [401 U.S.], at 430, 91 S.Ct., at 853. Respondent, however, appears in different clothing. . . . [P]etitioner does not seek his exclusion on the basis of a testing device which overstates what is necessary for competent performance, or through some sweeping disqualification of all those with any past record of unlawful behavior, however remote, insubstantial or unrelated to applicant's personal qualifications as an employee." McDonnell Douglas Corp. v. Green, supra, 411 U.S. at 805, 93 S.Ct. at 1826.
In the instant case, the considerations are much more similar to those in Green than in Griggs. Rather than concerning pre-employment education or circumstances beyond the control of the plaintiff, the plaintiff is working at an equal job to fellow white workers, for equal pay, with equal opportunity for advancement. The plaintiff or other employees must, independently of company action, overextend his credit to be discharged. The reasons for the policy, less efficiency and productivity, are job-related, and the policy is sufficiently circumscribed, more than once in a twelve month period, to prevent application on remote events. Any employee irregardless of race, that violates the policy, is discharged.
"Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed." Griggs, 401 U.S., at 431, 91 S.Ct. at 853. The policy here involved, applied as described here, cannot give such a preference. To hold this policy is discriminatory would go beyond correcting abuses and into the realm of "promoting equality with mathematical certainty", U.S.Code Cong. & Adm. News, p. 2516 (1964); a step Congress did not intend, Cong.Rec., Vol. 110, pp. 13079-13080, June 9, 1964; Dewey v. Reynolds Metal Co., 429 F.2d 324 (6th Cir. 1970).
Additional support for the finding that this policy was not to be a racially discriminatory practice prohibited by Congress may be found by passage of 15 U.S.C. § 1674, prohibiting discharge for any one garnishment. There would be no purpose for this bill with the plaintiff's interpretation of 42 U.S.C. § 2000e and the proposed application of Griggs. A policy of discharge for garnishment will be racially discriminatory in effect if any blacks are thus discharged by the plaintiff's reasoning. If only whites are discharged, then that is "preference for a [minority] group" proscribed by Griggs, and also failing to treat all races the same as white citizens by 42 U.S.C. § 1981. If the employer only hires whites, and will not hire blacks or minority group members to avoid possible discriminatory application of the policy, in all likelihood his conduct is violative of § 2000e. Therefore, discharge for garnishment must be discriminatory, and, if so, the 1968 statute of 15 U.S.C. § 1674 is not, and was not, needed. This Court does not so find. (Contra Johnson v. Pike Corporation of America, 332 F.Supp. 490 (C.D.Cal.1971).