**FRIENDSHIP MEDICAL CENTER, LTD., Plaintiff,**

v.

**SPACE RENTALS, a division of Transport Pool, Inc., and R. Ardson Bozarth, Defendants.**

**No. 73 C 2325.**

United States District Court, N. D. Illinois, E. D.

Jan. 25, 1974.

Ernest N. Powell, Jr., Edward A. Williams, Lott, Powell & Williams, Ltd., Chicago, Ill., for plaintiff.

Patrick W. O'Brien and Henry F. Field, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the motions of defendants Space Rentals Division, Transport Pool, Inc., and R. Ardson Bozarth to strike and dismiss the instant complaint.

This is an action seeking to redress the alleged wrongful conversion of a deposited sum, fraud, and conspiracy to deceive and defraud the plaintiff. This Court allegedly has jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy allegedly exceeds $10,000 exclusive of interest and costs.

The plaintiff, Friendship Medical Center ("Friendship") is a corporation incorporated under the laws of the State of Illinois, having its principal place of business in Chicago, Illinois.

Defendant Space Rentals Division, Transport, Inc. ("Space Rentals") is a corporation incorporated under the laws of the State of Pennsylvania, having its principal place of business in Bala Cynwyd, Pennsylvania. Defendant R. Ardson Bozarth is a resident of the State of Pennsylvania and Vice-President and General Manager for Space Rentals.

The plaintiff, in the complaint, alleges, *inter alia,* the following facts:

*Count I:*

1. On or about April 2, 1973, Space Rentals through its authorized agent, David H. Johnson, known to Friendship as the Area Manager for Space Rentals, made an invitation to Friendship to present to Space Rentals an offer, to its home office, entitled a Sales Order Proposal Offer. In accordance with the

provisions of that sales proposal, Space Rentals was to provide Friendship with a new medical center addition at Friendship's place of business for a total cost of $143,647.00. Pursuant to the Sales Proposal, Friendship was to tender to Space Rentals a twenty percent (20%) deposit in order to finalize the offer by Friendship to Space Rentals.

2. On or about May 11, 1973, prior to the tendering of said deposit, an addition to the Sales Proposal was made which increased the cost by $1,185.00 for an aggregate cost of $144,832.00. Because time was of the essence Friendship demanded and Space Rentals agreed that Space Rentals would obtain the necessay permits for construction within thirty (30) days of Friendship's offer so that Friendship would be able to continue to:

a) serve its millions of medical patients adequately;

b) maintain its high standard of professional medical practices to the community;

c) operate Friendship in a profitable manner;

d) fulfill its legal obligations with others not a party to this action; and

e) maximize on its expenditures, specifically with Space Rentals, through expanded operations, which the aforementioned was communicated and understood by Space Rentals.

Friendship demanded and Space Rentals agreed that if Space Rentals did not obtain the necessary permits for construction within thirty days of Friendship's offer, Space Rentals would return the twenty percent deposit required to finalize the offer.

3. On or about May 17, 1973, Friendship, through its authorized agent, T. R. M. Howard, known to Space Rentals as Friendship's Executive Director, signed the Sales Proposal in the home office of Friendship and tendered to Space Rentals the required twenty percent deposit in the amount of $28,966.40 to finalize Friendship's offer to Space Rentals, which Space Rentals, through its authorized agent, David H. Johnson, acknowledged the receipt and acceptance of the said deposit in writing. Because time was of the essence, the acknowledgement of the receipt and acceptance of the said deposit aforementioned above contained the following condition:

"In accepting this 20% deposit of $28,966.40, it is the absolute understanding that if all permits to consturct [sic] the agreed upon a structor [sic] on the premices [sic] of Friendship Medical Center are not received within 30 days, that said deposit in its entirty [sic] will be returned to Friendship Medical."

4. Friendship has performed all the conditions on its part to be performed pursuant to the Sales Proposal, to wit:

a) tendered the required deposit aforementioned above, and

b) signed the finalized Sales Proposal.

Space Rentals, knowing that time was of the essence did not perform any of the conditions on its part to be performed pursuant to the Sales Proposal to wit:

a) obtain the necessary construction permits within 30 days after Friendship's offer to Space Rentals; or

b) accept Friendship's offer at Space Rental's aforementioned home office; or

c) return the said deposit which Friendship tendered to Space Rentals; all of which operated as a rejection by Space Rentals of Friendship's offer.

5. Friendship has demanded the return of the deposit tendered to Space Rentals pursuant to the condition in the Sales Proposal that required the return of Friendship's deposit by Space Rentals upon Space Rental's nonperformance. Space Rentals, knowing that time was of

the essence, maliciously refuses to return said deposit to Friendship, although Friendship has made several demands that Space Rentals return said deposit.

6. As a result of the aforementioned acts of Space Rentals, Friendship has suffered: loss of profits, loss of income, impairment of contracts with others not a party to this action, loss of use of property wrongfully and maliciously withheld by Space Rentals, loss of business stature in the business community, loss of medical stature in the medical community, and loss of patients.

Because time was of the essence and by reason of the aforesaid, Friendship has been damaged in the sum of $500,000.00, no part of which has been paid.

*Count II.*

7. On or about April 2, 1973, in the City of Chicago, Illinois, Space Rentals through its authorized agent, David H. Johnson, represented and stated to Friendship in Friendship's home office:

a) that Space Rentals would provide Friendship with a new medical center addition at Friendship's aforementioned place of business for a total cost of $143,647.00, which said cost was on May 11, 1973, increased to $144,832.00;

b) that Space Rentals would obtain the necessary construction permits to accomplish a) above;

c) that Space Rentals would accomplish b) above within 30 days after Friendship tendered $28,966.40 to Space Rentals;

d) that Space Rentals would return $28,966.40 to Friendship if it (Space Rentals) did not obtain the necessary construction permits within 30 days after Friendship's tendering said amount to Space Rentals; and

e) that Space Rentals knew that time was of the essence so that Space

Rentals would proceed with due diligence in performing a) through d) above.

8. These statements were false and untrue. These statements were known by Space Rentals to be false when Space Rentals made the same, and that these statements were so made by Space Rentals:

a) for the purpose and with the intent of deceiving Friendship;

b) for the purpose and with the intent of defrauding Friendship; and

c) for the purpose and with the intent of inducing Friendship, in reliance thereon, to tender to Space Rentals the sum of $28,966.40.

9. Friendship believed that these statements so made by Space Rentals to be true and relief thereon and was thereby induced to:

a) tender to Space Rentals the sum of $28,966.40;

b) refrain from negotiating contracts with others, not a party to this action, for the purpose of building an addition to the medical center at Friendship's aforementioned place of business; and

c) assure others to which Friendship had entered into binding contracts, that Friendship would be able to meet its legal obligations with them.

Friendship has been damaged in the sum of $555,000.00, no part of which has been paid.

*Count III.*

10. Upon information and belief that theretofore and thereafter Space Rentals and Bozarth, in his individual capacity, entered into a conspiracy and scheme maliciously to deceive and defraud Friendship and to procure for their own use and benefit all the right and interest in and to $28,966.40, which Friendship tendered to Space Rentals through Bozarth. Space Rentals and Bozarth agreed

among themselves not to carry out or perform any of the conditions in the Sales Proposal offer Friendship transmitted to Space Rentals to wit:

a) that Space Rentals and Bozarth knowing that time was of the essence would provide Friendship with a new addition to its medical center at Friendship's aforementioned place of business at a low cost with top quality work;

b) that Space Rentals and Bozarth knowing that time was of the essence would obtain the necessary construction permits to accomplish a) above within thirty days after the tendering by Friendship of $28,966.40 to Space Rentals; and

c) that Space Rentals and Bozarth, knowing that time was of the essence, would return to Friendship the sum of $28,966.40 if Space Rentals and Bozarth could not:

(1) provide Friendship with the new addition; or

(2) obtain the necessary construction permits within 30 days after Friendship tendered said amount; but to delay and hinder Friendship in all proceedings, and to procure for themselves and benefits and advantages of $28,966.40 Friendship tendered to Space Rentals.

11. In furtherance of the said conspiracy and scheme, Space Rentals and Bozarth have received, accepted and retained $28,966.40 tendered to Space Rentals by Friendship, and all the beneficial interest therein, and have deprived Friendship of the use thereof.

*Count IV.*

12. In the alternative, plaintiff alleges that on or about April 2, 1973 in the City of Chicago, State of Illinois, Space Rentals, through its authorized agent, David H. Johnson, known to Friendship as the Area Manager for Space Rentals, made an invitation to Friendship to present to Space Rentals an offer to Space Rentals to provide Friendship with an addition to its medical center for a total cost of $143,647.00. On or about May 11, 1973, before Friendship communicated its offer to Space Rentals, Friendship increased the cost of its offer by $1,185.00 for an aggregate cost of $144,832.00.

13. On or about May 17, 1973, Friendship, through its authorized agent Executive Director, T. R. M. Howard, communicated the offer to Space Rentals and Space Rentals through its authorized agent Area Manager, David H. Johnson, received Friendship's offer for Space Rentals. Because time was of the essence the agreement contained the following condition:

"In accepting this 20% deposit of $28,966.40, it is the absolute understanding that if all permits to consturct [sic] the agreed upon a structor [sic] on the premices [sic] of Friendship Medical Center are not received within 30 days, that said deposit in its entirty [sic] will be returned to Friendship Medical Center."

14. Friendship has performed all the conditions on its part to be performed pursuant to the agreement, to wit: tendered twenty percent of the total amount of the agreement which said amount was $144,832.00 of which Space Rentals and Friendship agreed that $28,966.40 would be the correct amount. On or about May 30, 1973, Space Rentals through its authorized agent Area Manager, David H. Johnson, presented to Friendship for Friendship's signature, a purported acceptance of Friendship's offer to Space Rentals, which said acceptance was reduced to writing, which said Sales Contract substantially varied the terms and conditions of the original Sales Proposal. Friendship refused to execute the May 30, 1973 offer and in fact wrote on this offer: *"Void I will not sigh BY T.R.M. Howard, M.D."*

15. Because time was of the essence said Sales Contract contained the follow-

ing condition on Page 2 (Buyer is Friendship and Seller is Space Rentals):

"This Agreement will not become binding and effective until signed by an authorized officer of the Buyer and an authorized officer of the Seller."

Friendship has not signed the Sales Contract nor is Friendship under any obligation to sign said Sales Contract because said Sales Contract was substantially different from the offer Friendship communicated to Space Rentals. Friendship has given notice to Space Rentals of its intention not to sign said Sales Contract.

16. Friendship has at all times acted in good faith in its intention on carrying out its original offer. Space Rentals did not perform its obligation under the original offer, to wit:

a) obtain the necessary construction permits within 30 days after Friendship's offer to Space Rentals; or

b) accept Friendship's offer in its exact terms; or

c) return to Friendship the required deposit.

Friendship demanded and Space Rentals wrongfully and maliciously refused to return to Friendship its $28,966.40.

17. Because of the acts of Space Rentals and because time was of the essence, Friendship was forced to enter into a binding contract with another, not a party to this action.

By reason of the aforesaid, Friendship has been damaged in the sum of $600,000.00, no part of which has been paid.

The plaintiff seeks a declaratory judgment that Space Rentals has an obligation to return with interest the amount of $28,966.40 to Friendship and asks for punitive damages totalling over $2,000,000.00

The defendant Space Rentals, in support of its motion, contends that:

1. Count I is contradictory, unintelligible, and seeks legally incognizable relief.

2. Count II is contradictory, non-specific and fails to state a claim.

3. Count III fails to state a claim.

4. Count IV is unintelligible and fails to state a claim.

The defendant R. Ardson Bozarth, in support of his motion, contends that Count III of the complaint is not only self-contradictory and confused, in violation of Rule 8(a) of the Federal Rules of Civil Procedure, but also fails to state a claim because, under Illinois law, a corporation cannot "conspire with its agents."

The plaintiff, in opposition to the instant motion, contends that the instant complaint adequately and clearly states a cause of action.

It is the opinion of this Court, after carefully examining the "verified" instant complaint and the contentions of defendants, that the instant complaint is fatally unclear and inconsistent in violation of Rule 8 of the Federal Rules of Civil Procedure. This Court is of the opinion that in the interests of justice the instant complaint should be dismissed without prejudice and the plaintiff should be allowed to plead anew in a way that conforms both to the Federal Procedure and relevant case law.

## I. COUNT I IS UNCLEAR AND INCONSISTENT

All pleadings should be construed as to do substantial justice. Common Law pleading was the mill of justice in which an undefined, obscure mass of facts was ground down to clear and distinct issues. Under Rule 8 of the Federal Rules of Civil Procedure a plaintiff should draft a short and plain statement of the claim showing that the pleader is entitled to relief.

In Count I of the complaint the plaintiff states that it made an offer to have defendant Space Rentals construct

an addition to its medical facility which offer defendant never accepted (see complaint paragraphs 1, 2, 8, 9, and 12). However, in Count II, which is not in the alternative, the plaintiff states that defendant Space Rentals promised it would provide the plaintiff with a new medical center addition (see complaint paragraph 16(a)). These inconsistent statements have been verified by the affidavit of T.R.M. Howard, Executive Director of Friendship. Such an inconsistency clearly prevents the defendant Space Rentals from properly responding to the instant complaint, and thus the instant Count I is fatally defective and should be dismissed. See Dollar v. Land, 81 U.S.App.D.C. 28, 154 F.2d 307 (1946); Goshen Veneer Co., Inc. v. G & A Aircraft, Inc., 3 F.R.D. 344 (E.D.Pa. 1944); Johnson v. Occidental Life Insurance Co., 1 F.R.D. 554 (D.Minn. 1941).

## II. COUNT II FAILS TO PROPERLY STATE A CLAIM OF "FRAUD" BY THE DEFENDANT SPACE RENTALS.

Count II contains the statements plaintiff relies on to charge fraud.

The statements in Count II which plaintiff relies on to charge "fraud" by the defendants appear to be all promises as to future conduct and statements of intent. It is clear under Illinois law that a cause of action in fraud must be based upon representations of past or present fact, and that a complaint such as the instant one, premised on promises or statements of intention, states no claim even though it is alleged that the defendant never intended to perform. See Classic Bowl, Inc. v. AMF Pinspotters, Inc., 403 F.2d 463 (7th Cir. 1968); Stahly v. M. H. Jacobs Co., 183 F.2d 914 (7th Cir. 1950); Sin-

clair v. Sullivan Chevrolet Co., 31 Ill.2d 507, 202 N.E.2d 516 (1964); Plavec v. Plavec, 30 Ill.App.2d 345, 174 N.E.2d 578 (1968).

Since the plaintiff has failed to adequately state fraud based on representations of present or past fact, the Count II should be dismissed.

## III. COUNT III CHARGING CONSPIRACY TO DEFRAUD FAILS TO ADEQUATELY STATE A CAUSE OF ACTION.

Count III alleging a "conspiracy" by Space Rentals and R. Ardson Bozarth (Space Rentals' general manager*) to maliciously deceive and defraud the plaintiff, fails to state a claim because under Illinois law it is clear that a corporation cannot conspire with its officers and agents. The acts of an agent are considered in law to be those of the principal. Thus a conspiracy does not exist between a principal and agent. See J. W. T., Inc. v. Jos. E. Seagram & Sons, Inc., 347 F.Supp. 965 (N.D.Ill. 1972); John Deere Company v. Metzler, 51 Ill.App.2d 340, 201 N.E.2d 478 (1964). The plaintiff fails to allege that the defendant Bozarth was not acting as an agent of Space Rentals.

Thus the plaintiff in Count III has failed to state a claim against the defendants, and it should be dismissed.

## IV. COUNT IV IS UNCLEAR AND INCONSISTENT

A plain reading of Count IV indicates that it does not properly and clearly give the defendant Space Rentals notice of the claim against it, and thus should be dismissed.

It is the opinion of this Court that the request of both parties for attorneys' fees and costs should be denied.

---

* The defendant R. Ardson Bozarth adequately contends that this Court lacks *in personam* jurisdiction over him in his individual capacity. To support this contention the defendant has submitted his affidavit which states that he has no contacts whatsoever with Illinois in his individual capacity. The plaintiff, in its memoranda, has failed to controvert this contention or the defendant's affidavit.

Accordingly, it is hereby ordered that defendants' motions to strike and dismiss is granted, the instant case is dismissed without prejudice and the motions of both parties for attorneys' fees and costs is denied.