**Abioseh COLE et al.**

v.

**The UNIVERSITY OF HARTFORD et al.**

**Civ. No. H-74-304.**

United States District Court,
D. Connecticut.

March 19, 1975.

---

Mitchell W. Pearlman, Vernon, Conn., for plaintiffs.

Atwood Collins, II, Thomas J. Groark, Jr., Americo R. Cinquegrana, West Hartford, Conn., for defendants.

RULING ON MOTION TO DISMISS

BLUMENFELD, District Judge.

This is a civil rights action under 42 U.S.C. §§ 1981, 1985(3) (1970). The

named plaintiff is a black former employee of the defendant private university who claims he has been discriminated against because of his race by the University and defendants Woodruff and McKinley, respectively the president and vice president for student affairs of the University of Hartford.[1] The plaintiff seeks to represent a class of all blacks against whom the defendants have discriminated in employment matters.[2]

 The defendants have moved to dismiss on two grounds. The first is that this court has no jurisdiction of count one of the complaint, which alleges violations of 42 U.S.C. § 1981 (1970), because the plaintiff has not exhausted the administrative remedies available to him under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1970). The Second Circuit has recently ruled that such exhaustion is not required in a suit based on § 1981, see Gresham v. Chambers, 501 F.2d 687, 690–691 (2d Cir. 1974). Insofar as the motion to dismiss is based on a lack of exhaustion, it must therefore be denied.[3]

The second ground of the defendants' motion to dismiss is that count two of the complaint, which alleges a conspiracy to deny the alleged class their civil rights in violation of 42 U.S.C. § 1985(3) (1970), fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). This second ground is based on two separate arguments, only one of which need be considered.[4]

1. The plaintiff's long and discursive complaint alleges numerous discriminatory treatments of him by the University. For instance, he alleges that there were four applicants for the job of assistant dean of students, of which he was one. Each of the other applicants was first offered the job and declined it. McKinley then considered reopening the application process, and "[i]t was only the pressure from concerned internal and external sources which brought . . . McKinley to ultimately offer the job to the plaintiff in order to avoid then the issue of racial discrimination in hiring." Complaint at 4.

Although a minister and the holder of a master's degree, Cole was allegedly required to participate in a work-training program run by the Urban League for the disadvantaged. The University allegedly also put him on a probationary period that was three months longer than that required of other staff members. Cole also alleges that he was paid less than other similarly qualified persons holding similar jobs in the University.

The plaintiff claims too that he was continually harassed. His workload was increased while the secretarial and administrative help available to him was decreased. His salary meanwhile was reduced. He was asked to write a letter expressing dissatisfaction with a black secretary with whose work he was in fact satisfied. Cole was directed to assume responsibility for the scheduling of entertainment on campus although he objected "that he resented seeing blacks channeled only into the areas of entertainment and sports." Complaint at 7. He was not informed that the University was creating a position of dean of students and accepting applications for it.

Eventually Cole was dismissed by the University. He claims that he was given an inadequate grievance hearing and that the grievance committee failed to follow its own rules in addressing his case.

2. Cole claims that the University employs a very small number of blacks in administrative and faculty positions and makes the conditions under which they work unbearable (citing an allegedly high turnover rate among blacks in such positions).

3. Accord, Maldonada v. Broadcast Plaza, Inc., Civ.No. H–74–56 (D.Conn. Oct. 17, 1974) (Clarie, C.J.). The defendants have gone to great lengths to urge that this court not follow Gresham, arguing that its conclusion as to exhaustion was mere dicta based upon a misreading of the relevant precedents. It was necessary for the circuit court to find that exhaustion was not required in order to determine that the federal courts properly had jurisdiction of the case, however, Thus Gresham's conclusion is a holding, and is binding on this court. Even if it were dicta, however, this court would be extremely reluctant to depart from an obviously carefully considered conclusion of the Second Circuit that is barely six months old. The defendants' arguments would be more appropriately made to the circuit court, assuming that they lose on the § 1981 ground and take an appeal, than to me.

4. The argument not considered herein contends that the complaint does not allege a conspiracy with sufficient definiteness and clarity. See, e. g., Blackburn v. Fisk Univ., 443 F.2d 121, 124 (6th Cir. 1971); Kadlec

The defendants' argument is that the named plaintiff has not alleged the conspiracy between "two or more persons" prohibited by § 1985(3).[5] The argument relies on the doctrine that a corporation cannot conspire with its employees insofar as they are acting for the corporation. The leading case, Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952), discusses this doctrine cogently in the context of an antitrust case:

"It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Here it is alleged that the conspiracy existed between the defendant corporation, its president, Calvin, its sales manager, Kelly, and its officers, employees, representatives and agents who have been actively engaged in the management, direction and control of the affairs and business of defendant. This is certainly a unique group of conspirators. The officers, agents and employees are not named as defendants and no explanation is given of their non-joinder. Nor is it alleged affirmatively, expressly, or otherwise, that these officers, agents, and employees were actuated by any motives personal to themselves. Obviously, they were acting only for the defendant corporation. . . . [I]t appears plain to us that the conspiracy upon which plaintiff relies consists simply in the absurd assertion that the defendant, through its officers and agents, conspired with itself to restrain its trade in its own products. Surely discussions among those engaged in the management, direction and control of a corporation concerning the price at which the corporation will sell its goods, the quantity it will produce, the type of customers or market to be served, or the quality of goods to be produced do not result in the corporation being engaged in a conspiracy in unlawful restraint of trade under the Sherman Act. . . .

"We think that in naming these officers, employees and agents as conspirators the plaintiff was mistakenly attempting to avail himself of the doctrine that what it would not be illegal for a corporation to do alone would be illegal as a conspiracy when done with another legally separate person or entity. However, as stated by Judge Chesnut in Arthur v. Kraft-Phenix Cheese Corporation, [26 F. Supp. 824, 830 (D.Md.1938),] '. . . the inclusion of the defendant's agents in the alleged conspiracy would seem to be only the basis for a technical rather than a substantial charge of conspiracy because obviously the agents were acting only for the defendant corporation.' In the absence of any allegation whatever to indicate that the agents of the corporation were acting in other than their normal capacities, the plaintiff has failed to state a cause of action based on conspiracy under Section 1 of the Act. . . ."

This doctrine has been held to apply to § 1985 actions, see Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972),[6] and there would seem to be no good rea-

---

v. Illinois Bell Tel. Co., 407 F.2d 624 (7th Cir.), cert. denied, 396 U.S. 846, 90 S.Ct. 90, 24 L.Ed.2d 95 (1969) ; Valley v. Maule, 297 F.Supp. 958 (D.Conn.1968).

5. The complaint alleges that "[t]he defendants, their agents and employees, acting in consort [sic], conspired" against the plaintiff in violation of § 1985(3). Complaint at 12.

6. Three other cases cited by the defendants as supporting use of the Nelson Radio rule in a § 1985 context do not do so. See Flores v. Yeska, 372 F.Supp. 35 (E.D.Wis. 1974) (no corporation involved) ; Wallace v. Debron Corp., 363 F.Supp. 837, 838 (E.D. Mo.1973), rev'd, 494 F.2d 674 (8th Cir. 1974) (ambiguous citation of Dombrowski) ; Westberry v. Gilman Paper Co., 60 F.R.D. 447, 454 (S.D.Ga.1973) (court states that it avoids the Dombrowski issue).

son for disputing this conclusion. The parties are in agreement as to this proposition, but in disagreement as to whether the scope of the *Nelson Radio* doctrine embraces the case presented here.

 The plaintiff argues that it does not. In this case the officers have been joined as defendants in their individual capacities, which formally distinguishes this case from *Nelson Radio*. Thus there are really three defendants in this case: the University plus its officers acting in their official capacities, Woodruff acting in his individual capacity, and McKinley acting in his individual capacity. The plaintiff argues that he has alleged a conspiracy among these three defendants. However, in order to find, as Cole wishes, that the University can be a party to any conspiracy among these defendants, a very narrow set of circumstances must be found. Obviously the University, acting through Woodruff (or McKinley), cannot conspire with Woodruff (or McKinley) acting in his individual capacity. *See, e. g.,* Pearson v. Youngstown Sheet & Tube Co., 332 F.2d 439 (7th Cir.), cert. denied, 379 U. S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964); Zelinger v. Uvalde Rock Asphalt Co., 316 F.2d 47 (10th Cir. 1963); Ariate Compania Naviera, S. A. v. Commonwealth Tankship Owners, Ltd., 310 F.Supp. 416 (S.D.N.Y.1970). In order to do so Woodruff (or McKinley) would have to conspire with himself—the official hat he wears would have to conspire with his individual hat. But no matter how many hats he wears, an individual cannot conspire with himself. *See, e. g.,* Windsor Theatre Co. v. Walbrook Amusement Co., 94 F.Supp. 388, 396 (D.Md.1950), aff'd, 189 F.2d 797 (4th Cir. 1951); *cf.* Friendship Medical Center, Ltd. v. Space Rentals, 62 F.R.D. 106 (N.D.Ill.1974). Thus the corporation could be a party to a conspiracy only if it were shown that Woodruff (or McKinley) in his official capacity conspired with McKinley (or Woodruff) in his individual capacity.[7] In order to find that Woodruff and McKinley are individually liable for a conspiracy, it would have to be found that they, in their individual capacities, conspired with one another. And there is no way to find that Woodruff, McKinley, and the University are *all* parties to a conspiracy.[8]

 In order to understand whether the complaint sufficiently alleges one of these sets of circumstances that would support a finding of a conspiracy between two or more persons, it is necessary to decide when a corporate official can be said to be acting in his individual, as opposed to his official, capacity. The usual case of an officer acting in his individual capacity was stated clearly by Judge Wyzanski in a charge to the jury in an antitrust suit:

"Ordinarily, an officer of a corporation will be acting for the corporation when he acts. And therefore, there is, in contemplation of law, only one action; he is acting for the corporation, and you couldn't say that there is a conspiracy when he acts for the corporation because both he and the corporation are involved.

"Although this is the ordinary rule, there are possibilities of exceptional situations. . . . It may happen that an individual, let us say X, is the officer of X Company, and is also interested in Y Company, and it may happen that when X acts, he acts both for the X Company and for the Y Company, or he acts both for the X Company and on his own account. If this situation does exist, then it is possible to find a conspiracy, because

7. In cases where such a showing is not made, it has been held that a corporation cannot conspire with two or more of its employees because they all are part of the same corporate person. *See* Koehring Co. v. National Automatic Tool Co., 257 F.Supp. 282 (S.D.Ind.1966), aff'd, 385 F.2d 414 (7th Cir. 1967); Johnny Maddox Motor Co. v. Ford Motor Co., 202 F.Supp. 103 (W.D. Tex.1960).

8. This fact alone is not a ground for dismissal of count two of the complaint. Fed.R. Civ.P. 8(e)(2) explicitly allows inconsistent claims to be made in a complaint.

he is acting in a dual role and he is, in contemplation of law, two persons. . . ."

Cape Cod Food Prods., Inc. v. National Cranberry Ass'n, 119 F.Supp. 900, 909 (D.Mass.1954); see Greenville Publishing Co. v. Daily Reflector, Inc., 496 F.2d 391, 399–400 (4th Cir. 1974); Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952). Simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation. The plaintiff must also allege that they acted other than in the normal course of their corporate duties. See Webb v. Culberson, Heller & Norton, Inc., 357 F.Supp. 923, 924 (N.D.Miss. 1973); cf. Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952). In this case no such allegation has been made; "[i]t is not alleged that the individual defendants committed any act of a personal nature except in connection with the corporate affairs." Webb v. Culberson, Heller & Norton, Inc., 357 F.Supp. 923, 924 (N. D.Miss.1973). The only realistic target of Cole's complaint is the University, which allegedly discriminated against him as an employee.

The plaintiff argues, however, that *Dombrowski* contemplates a broader exception to the *Nelson Radio* rule than the one set out above, for it states:

"We do not suggest that an agent's action within the scope of his authority will always avoid a conspiracy finding. Agents of the Klan certainly could not carry out acts of violence with impunity simply because they were acting under orders from the Grand Dragon. . . ."

459 F.2d at 196. Read most broadly, *Dombrowski* may say that the *Nelson Radio* rule does not apply whenever racial discrimination is alleged; more narrowly, as the defendants would read *Dombrowski*, it may carve out an exception where violent acts are alleged. Neither of these interpretations is satisfactory, however. The first reading is foreclosed by *Dombrowski* itself, which involved allegations of racial discrimination; the second reading is based on no principled rationale. Perhaps the best explanation for this dicta in *Dombrowski* is that the law will not let those who would otherwise fall afoul of § 1985(3) avoid its effects by forming a corporation. In other words, conspirators may not create a principal for whom they are agents in order to make their acts all the acts of a single legal person that cannot be charged with conspiring with itself. This "piercing the veil" notion is more satisfying than a distinction based on the presence of violent acts, for it comports with well-recognized principles from other areas of the law. See, e. g., Anderson v. Abbot, 321 U.S. 349, 361–363, 64 S.Ct. 531, 88 L.Ed. 793 (1944); Minton v. Cavaney, 56 Cal.2d 576, 15 Cal.Rptr. 641, 364 P.2d 473 (1961) (en banc) (Traynor, J.); W. Cary, Cases and Materials on Corporations 109–49 (4th ed. unabr. 1969).[9] Neither this reading nor the "violence" reading gives succor to the plaintiff in this case, however. The University of Hartford was obviously not incorporated in order to perpetuate racial discrimination; the complaint alleges no violence done to the plaintiff.[10]

---

9. The use of a veil-piercing doctrine here may vary in some ways from its use in one of its more familiar contexts, that of the sham corporation. The theory in each context is the same, however: "when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." United States v. Milwaukee Refrigerator Transit Co., 142 F. 247, 255 (C.C.E.D.Wis.1905).

10. It should be noted that denying recovery under § 1985(3) will not necessarily deny all remedies to a plaintiff. In this case, for instance, an action under 42 U.S.C. § 1981 (1970) survives. State tort actions may also provide an avenue for obtaining relief, and violations of the criminal laws can of course be punished whether committed individually or as the agent of a corporation. The result reached here works little or no injustice on those who seek legal redress for discriminatory acts that have caused them injury.

Because no exception is shown to apply, the rule of *Nelson Radio* applies: there is no more than one person, in legal contemplation, alleged to have conspired against the plaintiff here. Therefore count two of the complaint does not state a cause of action under 42 U.S.C. § 1985(3) (1970) and must be dismissed. Fed.R.Civ.P. 12(b)(6).

The motion to dismiss count one of the complaint is denied; the motion to dismiss count two is granted. It is

So ordered.