NESS CREAMERIES *v*. BARTHES *et al.*

(Division A. June 5, 1934. Suggestion of Error Overruled October 1, 1934.)

[155 So. 222. No. 31265.]

W. L. Guice and Wadlington, Corban & Grant, all of Biloxi, John L. Heiss, of Gulfport, and R. H. and J. H. Thompson, both of Jackson, for appellant.

Mize, Thompson & Mize, of Gulfport, for appellees.

Argued orally by **W. L. Guice** and **J. H. Thompson**, for appellant, and by **S. C. Mize**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

This is an appeal from a judgment for damages for the death of the appellee's intestate. The case was tried twice, resulting each time in judgment for the appellees; the first judgment being set aside by the court below. There is both a direct and a cross-appeal; the purpose of the cross-appeal being to have the first judgment reinstated, it being for a larger amount than the second. On the direct appeal, the appellant's main contention, and if it disappears its others are without merit, is that the court below should have granted its request for a directed verdict.

The appellant owns and operates a creamery, a refrigerating plant being a part thereof. A part of its refrigeration outfit consists of an ammonia tank. This tank was on the second floor of the building in which the machinery was housed, and was securely attached to a heavy timber on the floor thereof. Projecting from this ammonia tank and about eighteen inches above the floor was a metal pipe, of either wrought iron or steel, three-quarters of an inch in diameter and twelve inches long; attached thereto at the end thereof was a quite heavy valve, which together with its necessary appurtenances was seven and a quarter inches long, making the total length of the pipe and the valve nineteen and a quarter inches. The building in which the plant was housed was a substantial brick structure. The machinery which operated the plant, and an electric motor which furnished its power, were on the first floor on a substantial concrete foundation.

Intending to move its plant to another location, the appellant employed an independent contractor to move some of the machinery. In order to move a portion of this machinery, it became necessary for the contractor to attach some heavy timbers to the ceiling of the second floor of the building for the support of a block and tackle. While attaching these timbers to the ceiling, the workmen necessarily had to be within a few feet of the ammonia tank. As they were lifting one of the timbers, the pipe projecting from the tank broke, fell off, and the ammonia escaped from the tank, causing the death of the appellee's intestate, who was one of the contractor's workmen. The building was lighted, the pipe projecting from the ammonia tank was in plain view, and the evidence negatives its having been struck by anyone at the time it broke, or that any timber or tool used by the workmen fell thereon. Its breaking is accounted for by the appellees on this theory: A number of experts testified that it was common scientific knowledge that metal when subject to vibrations will crystallize at the point

of principal vibration, become brittle there, and break; that the pipe, at its point of breaking, showed such crystallization, and that the heavy valve at the end thereof was sufficient to cause it to break of its own weight; that the pipe, from an engineering standpoint, was improperly installed; that due care required that a support should have been placed under it at or near the end thereof, which support would have been inexpensive, would have lessened the pipe's vibration and prevented its breaking of its own weight in event crystallization occurred, all of which would have been known to any competent engineer.

There was also evidence to the effect that there would be some vibration incident to the operation of the appellant's plant, and, in addition, that the occupants of nearby dwellings were accustomed to feel vibrations from the passing of trains on a nearby railroad, and of heavy trucks along the street on which the appellant's plant abuts. There was evidence for the appellant that no vibrations from trains or trucks were perceptible in its building, and that no vibrations at all were felt by the occupants thereof, that metal did not crystallize from vibrations, and that the pipe was attached to the ammonia tank in the usual and ordinary way. The tank had been in use for about four years, was the best that could be purchased at the time; the pipe was attached to the tank when received from the factory just as it was when it broke, except that, when received by the appellant, there was a water gauge a few inches above the pipe, which gauge extended from the tank to a point immediately above the valve, and was attached to the valve by a perpendicular fixture. This gauge had been removed. Had it been allowed to remain, according to the appellee, it would have tended to lessen any vibration of the pipe which broke.

The contractor and his workmen were on the appellant's premises by its invitation for the accomplishment of a purpose for its benefit. Consequently, it owed them

the duty of exercising reasonable care to prevent their being injured by any defect in the premises or its machinery.

The appellant's machinery, including this pipe, was frequently inspected, but the defect in the pipe, if such there was, was not discoverable by an examination of its surface, and according to the appellant the breaking of the pipe because of crystallization, if such in fact occurred, was an unforeseeable event, and therefore the appellant is not liable therefor. This is true, unless it is a well-known scientific fact that such crystallization resulting in a breaking of the pipe might occur, and such was the appellees' evidence. Characteristics of ammonia are such that exposure thereto is imminently dangerous to human life, and the appellant was charged with the duty of using such reasonable precautions against its escaping from the tank as well-known scientific facts afforded. As said by the Missouri court of appeals in Hysell v. Swift & Co., 78 Mo. App. 39: "It may be laid down as a legal principle, that in all occupations which are attended with great and unusual danger there must be used all appliances readily attainable known to science for the prevention of accidents, and that the neglect to provide such readily attainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon."

If the evidence for the appellees be true, the appellant and its agent in charge of the plant either knew of the danger of the pipe breaking because of crystallization, or were negligent in not knowing it.

On the evidence the liability vel non of the appellant was for the determination of the jury.

The evidence on both of the trials was practically the same, and the appellant's brief makes no specific refer-

ence to the setting aside of the judgment in the first trial, and no reason appears in justification therefor.

The judgment of the court below would be affirmed on the direct appeal, but, on the cross-appeal, it must be reversed, and the former judgment reinstated. So ordered.