**Raymond L. SPRANKLE,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**BOWER AMMONIA & CHEMICAL CO., Defendant-Appellee,**
**Cross-Appellant.**

No. 86–4244.

United States Court of Appeals,
Fifth Circuit.

Aug. 18, 1987.

410

Joe Sam Owen, Chester A. Nicholson, Ben F. Galloway, Gulfport, Miss., for plaintiff-appellant, cross-appellee.

David B. Strain, Gulfport, Miss., for defendant-appellee, cross-appellant.

Before WISDOM, JOHNSON, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Raymond L. Sprankle (Sprankle) developed respiratory problems

while employed by Reichhold Chemicals, Inc. (Reichhold), allegedly due to anhydrous ammonia that leaked from storage tanks furnished and maintained at Reichhold's plant by defendant-appellee Bower Ammonia & Chemical Company (Bower). Sprankle brought this diversity action against Bower to recover damages for his injuries, asserting four theories of liability. The district court refused to charge the jury on Sprankle's theories of negligent failure to warn and strict liability for an abnormally dangerous activity. Sprankle's remaining theories of liability, for negligent failure to maintain the storage tanks and for strict liability due to failure to warn, were submitted to the jury, which found for Bower, and the district court entered judgment in its favor. Sprankle appeals, claiming that the district court erred by directing a verdict on the negligent failure to warn and the strict liability for abnormally dangerous activity theories, and also by refusing to admit certain evidence. We affirm.

### Facts and Proceedings Below

From August 1978 through June 1981, Sprankle worked for Reichhold at its chemical plant in Gulfport, Mississippi, initially as an "outside operator," and later as the supervisor's assistant. At the Gulfport facility, where it manufactured chemical resins, Reichhold used anhydrous ammonia as a neutralizing agent in producing the resins. The ammonia was combined with other chemicals and mixed in large reactors, or "kettles," that were owned and operated by Reichhold. The ammonia used by Reichhold was supplied by Bower and stored in tanks owned and largely maintained by Bower, which were located outside in a courtyard at the Reichhold plant. Ammonia was taken from the storage tanks by Reichhold pipes and delivered to the kettles.

Early in the morning on May 30, 1981, while Sprankle was walking up a staircase that originated in the courtyard near the Bower storage tanks and that led to the top of the kettles on the third floor inside the Reichhold facility, he encountered a pocket of ammonia gas. Sprankle subsequently developed respiratory problems. He received medical treatment for these problems, and he also sought and received benefits pursuant to Mississippi workers' compensation laws.

Sprankle filed this diversity suit against Bower on March 5, 1984. In his complaint, Sprankle alleged that the ammonia he inhaled came from the Bower storage tanks and that the exposure caused his respiratory problems. Sprankle sought recovery under four theories of liability: (1) strict liability for engaging in an abnormally dangerous activity, (2) strict products liability for failure to warn of the dangers of exposure to anhydrous ammonia, (3) negligent failure to warn, and (4) negligent failure to maintain the storage tanks.

The district court declined to submit to the jury Sprankle's theories of negligent failure to warn and strict liability for an abnormally dangerous activity, ruling thereon in Bower's favor as a matter of law. The remaining claims were submitted to the jury on special interrogatories, which asked:

"1. On May 30, 1981, was the anhydrous ammonia in a defective condition, unreasonably dangerous to the plaintiff because of the failure to give adequate warnings to the plaintiff, and if so, did it proximately cause or contribute to the plaintiff's injuries?

"2. Was Bower Ammonia and Chemical Company negligent, and if so, did such negligence proximately cause or contribute to the plaintiff's injuries?

"3. If your answer to Questions No. 1 and No. 2 is "No", your job is done. If your answer to either Question No. 1 or No. 2, or both, is "Yes", then what sum of money will reasonably compensate the plaintiff for his claimed injury and damage?"

The jury answered "no" to interrogatories 1 and 2, and pursuant to the conditioning instructions of interrogatory 3, did not answer that interrogatory. Based on the jury's answers, the district court entered judgment for Bower. This appeal followed.

## Discussion

### I. *Negligent Failure to Warn*

Sprankle contends on appeal that because sufficient evidence was presented to raise a jury question as to whether Bower was negligent in failing to warn him of the risks associated with exposure to anhydrous ammonia, the district court erred in failing to submit this theory to the jury. We conclude that the district court's action in this respect does not constitute reversible error for two reasons.

■ First, since the evidence makes plain that Sprankle was aware of the precise danger of which he complains Bower failed to warn him, Bower cannot be held liable on this ground. Although the Mississippi courts have not spoken in depth on the subject,[1] Mississippi apparently follows the general rule that in an action for negligent failure to warn, there is no right to recover where the party to be warned is already aware of the danger.[2] In *Hobart v. Sohio Petroleum Co.*, 255 F.Supp. 972 (N.D.Miss.1966), for example, a federal district court applying Mississippi law held that because the plaintiffs knew of the danger of suffocation associated with hydrogen sulfide gas, the defendant had no duty to warn them of this danger. In reaching this conclusion, the *Hobart* court summarized Mississippi law governing a claim brought under a negligent failure to warn theory:

> "The Mississippi decisions are not inconsistent with the principles applicable in practically all other jurisdictions which impose a duty on distributors, shippers and other suppliers of inherently dangerous substances of conveying to users and other persons who may foreseeably be exposed to the hazard a fair and adequate warning of the dangerous potentialities. An inherently dangerous substance is one burdened with a latent danger or dangers which derives from the very nature of the substance itself, and the duty arises only with respect to hidden or concealed dangers. Even though the danger may be hidden, the duty encompasses only dangers which are unknown, and there is no duty to warn when the user has actual knowledge of the danger. Knowledge of the danger is equivalent to prior notice, and a failure to warn of a fact of which the user is already fully aware is not a breach of duty." *Hobart*, 255 F.Supp. at 974–75 (citations omitted).

Sprankle was fully aware of the hazards associated with exposure to anhydrous ammonia. Upon cross examination, Sprankle testified that during his employment with Reichhold he had refused to participate in the weekly cleaning of algae from Bower's ammonia tanks because "he knew what he was getting into"; he knew, in other words, that exposure to the ammonia was dangerous. Sprankle also testified that on several occasions prior to the May 30, 1981, incident he had inhaled ammonia fumes that came from ammonia stored in Reichhold's kettles. In his words, as a result of those earlier exposures, "you would either have a nose bleed or you would throw up, but it would burn you. You could feel a burning sensation as you would breathe it

---

**1.** As the parties acknowledge, Mississippi substantive law governs this diversity case. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**2.** *Hobart v. Sohio Petroleum Co.,* 376 F.2d 1011 (5th Cir.1967), *aff'g* 255 F.Supp. 972 (N.D.Miss. 1966) (applying Mississippi law); *Buford v. Jitney Jungle Stores,* 388 So.2d 146, 149 (Miss. 1980) (owner of premises had no duty to warn electrician of danger already known to the electrician); *Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182, 1184 & app. (5th Cir. 1978) (adopting memorandum opinion of federal district court in Mississippi); *see also, e.g., Jamieson v. Woodward & Lothrop,* 247 F.2d 23 (D.C. Cir.) (en banc), *cert. denied,* 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957); *Garrett v. Nissen Corp.,* 498 P.2d 1359, 1364 (N.M. 1972); *Prosser and Keeton on Torts* § 98, at 686–87 (W. Keeton 5th ed. 1984).

With respect to a manufacturer's liability for negligent failure to warn, a similar rule is set forth in the *Restatement (Second) of Torts* § 388 (1965), which Mississippi has expressly adopted. *See Robirtson v. Gulf & S.I.R. Co.,* 171 Miss. 628, 158 So. 350 (1935). In part, Section 388 provides that a manufacturer will be liable if he negligently fails to warn when he "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition."

in." Additionally, on direct examination Sprankle specifically testified that he first became aware of the dangers of ammonia in 1979 when, as president of the International Chemical Workers Union, Local 806, he received a pamphlet—not authored or distributed by Bower—that explained the hazards and toxicology of ammonia.[3] The evidence clearly demonstrates that Sprankle was aware of the hazards to the respiratory system associated with inhalation of ammonia. There was no evidence on which a contrary finding could be based. We therefore determine that as a matter of Mississippi law, Bower had no duty to warn Sprankle of these dangers.[4]

■ We also reject Sprankle's complaints in this respect for another reason. In substance, Sprankle's contention is that the jury charge and interrogatories wrongfully omitted his negligent failure to warn theory. However, we conclude that in light of the charge and interrogatories as a whole any theoretical error in this respect was harmless. The district court submitted for jury determination Sprankle's strict liability failure to warn theory. The jury found in favor of Bower on this theory. To do so, the jury either had to find that the ammonia tanks were not rendered defective by Bower's warning (*i.e.*, that under the circumstances, the warnings given by Bower were sufficient) or that Bower's warnings, even if inadequate, did not proximately cause Sprankle's injury. Since both inadequate warning and proximate cause are factual elements on which a plaintiff must secure favorable jury findings in order to prevail in a warning claim brought under a negligence theory, as well as in one based on a strict liability theory, the jury's rejection of Sprankle's strict liability theory *necessarily* also constitutes a rejection by the jury of at least one essential factual element of Sprankle's negligent failure to warn theory.

Although conceptually different,[5] the two theories of liability each present the

3. This two-page pamphlet, entitled "Chemical Hazards of the Workplace," contained a section on "Ammonia" that provided, in part:

"**Exposure:** Inhalation
"**Toxicology:** Ammonia is a severe irritant of the eyes, respiratory tract, and skin.
"Exposure to and inhalation of concentrations of 2500 to 6500 ppm cause severe corneal irritation, dyspnea, bronchospasm, chest pain, and pulmonary edema, which may be fatal; production of pink frothy sputum often occurs. Consequences can include bronchitis or pneumonia; some residual reduction in pulmonary function has been reported.
"...
"**Diagnosis:** Signs and symptoms include eye, nose, throat irritation; dyspnea, bronchospasm, chest pain, pulmonary edema, pink frothy sputum; skin and eye burns and vesiculation."

Sprankle contends on appeal that because the pamphlet also stated that "[t]olerance to usually irritating concentrations of ammonia may be acquired by adaptation," and because it used the "technical jargon" of "ppm['s]," the pamphlet minimized the dangers of ammonia inhalation. We find this argument unpersuasive. Sprankle did not testify or otherwise urge at trial that the contents of the pamphlet misled him about the seriousness of the hazards associated with exposure to ammonia. He testified only that the pamphlet first made him aware of such dangers. Since Sprankle did not make his "watered down" argument at trial, and since his testimony showed that his awareness of the dangers of ammonia was derived not only from the pamph-let, but from personal experience and other sources as well, we think the evidence unequivocally indicates that Sprankle understood the seriousness of the hazards of anhydrous ammonia.

4. In reaching this conclusion, we consider all the evidence presented and view it, along with all inferences that reasonably may be drawn from it, in the light most favorable to Sprankle. *See Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). So viewed, however, we find that reasonable minds could not conclude that Sprankle was unaware of the pulmonary system dangers associated with anhydrous ammonia inhalation.

5. Courts and commentators alike differ in the extent to which they find conceptual differences in failure to warn cases brought under negligence and strict liability theories. *Compare, e.g., Werner v. Upjohn Co.,* 628 F.2d 848, 858 (4th Cir.1980); *Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374, 386 (1984); *and Prosser and Keeton on Torts* § 99(2) (W. Keeton 5th ed. 1984) *with Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182, 1190 (5th Cir.1978); *Jackson v. Coast Paint & Lacquer Co.,* 499 F.2d 809, 812 (9th Cir.1974); *Hamilton v. Hardy,* 37 Colo.App. 375, 549 P.2d 1099 (1976) *and* J. Beasley, *Products Liability and the Unreasonably Dangerous Requirement* Ch. 16 (1981). Those who view the two as conceptually distinct emphasize that a warning could satisfy a negligence standard and yet be inadequate for strict liability purposes. As one court described the distinction:

essential question whether an inadequate warning caused the plaintiff's injuries. *See Gordon v. Niagara Mach. & Tool Works*, 574 F.2d 1182, 1190 (5th Cir.1978). The jury's finding under the strict liability theory that no failure to warn caused Sprankle's injuries thus cures any possible error in the district court's not submitting Sprankle's negligent failure to warn claim to the jury. Accordingly, for both of the above-stated reasons, we reject Sprankle's complaints concerning the failure to submit his theory of negligent failure to warn.

## II. *Strict Liability for Abnormally Dangerous Activities*

■ The district court also declined to submit to the jury Sprankle's claim that Bower should be held strictly liable for undertaking the abnormally dangerous activity of storing large quantities of anhydrous ammonia, ruling thereon in Bower's favor as a matter of law. Sprankle challenges the directed verdict in Bower's favor on this theory of recovery as well. He contends that Bower's storage of anhydrous ammonia was an abnormally dangerous activity to which strict tort liability attaches as a matter of Mississippi law. We disagree.

The notion that a party engaged in an ultrahazardous or abnormally dangerous activity should be held strictly liable for resulting damages originated in the well-known English case, *Rylands v. Fletcher*,

L.R. 3 H.L. 330 (1868), *aff'g* L.R. 1 Ex. 265 (1866), *rev'g* 3 H. & C. 774, 159 Eng.Rep. 737 (1865). In *Rylands*, liability was imposed for constructing a water reservoir that allowed water to break through into the adjoining mine shafts owned by the plaintiff. The theory of liability that developed from *Rylands* and subsequent English cases is "that the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." *Prosser & Keeton on Torts* § 78, at 547–48 (W. Keeton 5th ed. 1984). Modern courts have generally applied the *Rylands* doctrine of strict liability only to activities "variously characterized as 'perilous,' 'ultra-or extra-hazardous,' or 'abnormally dangerous,'" *Sterling v. Velsicol Chemical Corp.*, 647 F.Supp. 303, 312–13 (W.D. Tenn.1986) (citations omitted), and only where the activity is inappropriate to the place or location where it is carried on. *See Prosser & Keeton on Torts, supra*, § 78 and cases cited therein.

The *Restatement (Second) of Torts* §§ 519–520 (1977) (*Restatement*) contains a similar statement of the doctrine. Section 519 provides:

"(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity,

---

"In a strict liability case we are talking about the condition (dangerousness) of an article which is sold without any warning, while in negligence we are talking about the reasonableness of the manufacturer's action in selling the article without a warning. The article can have a degree of dangerousness because of a lack of warning which the law of strict liability will not tolerate even though the actions of the seller were entirely reasonable in selling the article without a warning considering what he knew or should have known at the time he sold it." *Phillips v. Kimwood Mach. Co.*, 269 Or. 485, 525 P.2d 1033 (1974); *quoted in Hamilton*, 549 P.2d at 1109.

Since "strict tort liability shifts the focus from the conduct of the manufacturer to the nature of the product," this view maintains, liability may result in strict liability where it would not attach under a negligence theory. 2 L. Frumer & M. Friedman, *Products Liability* § 16A[4][e]

(1976); *see also, e.g., Jackson*, 499 F.2d at 812; *Hamilton*, 549 P.2d at 1107. No court or commentator has suggested the reverse, however. The consensus thus seems to be that while a greater showing (*i.e.*, the additional proof of negligence) may be required of a plaintiff suing under a negligent failure to warn theory than one suing under strict products liability theory, in no event is "less" required. *Cf. Little v. PPG Indus., Inc.*, 19 Wash.App. 812, 579 P.2d 940 (1978) (holding that in some cases where the plaintiff alleges failure to warn under both negligence and strict liability theories, to avoid confusion the jury should be instructed *only* on the strict liability claim). Hence, although a jury finding against a claim of negligent failure to warn may not preclude a finding of strict liability, *see, e.g., Jackson*, 499 F.2d at 811–12, a jury finding against strict liability for failure to warn necessarily precludes a finding in favor of the plaintiff on a negligence theory.

although he has exercised the utmost care to prevent the harm.

"(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous."

Section 520 lists the factors to be considered in determining what constitutes an abnormally dangerous activity:

"(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

"(b) likelihood that the harm that results from it will be great;

"(c) inability to eliminate the risk by the exercise of reasonable care;

"(d) extent to which the activity is not a matter of common usage;

"(e) inappropriateness of the activity to the place where it is carried on; and

"(f) extent to which its value to the community is outweighted by its dangerous attributes."

Mississippi courts have recognized a cause of action under this strict liability theory for certain abnormally dangerous activities. *See Teledyne Exploration Co. v. Dickerson,* 253 So.2d 817 (Miss.1971); *Central Exploration Co. v. Gray,* 219 Miss. 757, 70 So.2d 33 (1954). The Mississippi Supreme Court in *Gray* explicitly relied on *Rylands* in holding that one who uses or stores dynamite or other dangerous explosives within a populated area should be held "absolutely liable, irrespective of negligence, [for] damage to the person or property of an adjacent owner." *Gray,* 70 So.2d at 36. In the later *Teledyne* case,

the rule first enunciated in *Gray* was applied to hold a seismic exploration company "absolutely liable" for property damage to an adjacent landowner's home caused by the company's seismic explosions in a residential area. *Teledyne,* 253 So.2d at 818–19. These cases indicate that Mississippi courts recognize a strict liability cause of action for certain ultrahazardous activities.

No reported Mississippi case, however, has considered whether the doctrine of *Rylands* extends to the storage of anhydrous ammonia at a chemical plant, which is the activity at issue in this case. It is our task, therefore, to predict whether the Mississippi Supreme Court would decide that Bower's storage of ammonia at the Reichhold plant constitutes an ultrahazardous activity for purposes of imposing strict liability.[6] *See Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Seafirst Commercial Corp. v. United States Fidelity & Guar. Co.,* 780 F.2d 1290, 1294–95 (5th Cir.1986). We think the Mississippi court would hold that it does not.

Contact with ammonia, particularly in its liquid state, can be extremely dangerous. *See Cropper v. Rego Distrib. Center, Inc.,* 542 F.Supp. 1142, 1145 (D.Dela.1982); *Ness Creameries v. Barthes,* 170 Miss. 865, 155 So. 222, 224 (1934).[7] Anhydrous (dry) ammonia, however, is poisonous only if inhaled at large concentrations, although its penetrating odor makes it a strong irritant at concentrations much lower than those that present health risks; therefore, we think the likelihood that storage of anhy-

---

**6.** In this connection, we note that whether an activity is an abnormally dangerous one is a question of law to be determined by the court, at least to the extent that the determination does not depend on a resolution of conflicting evidence on specific, historic facts. There is no relevant dispute in the evidence here. *See Restatement* § 520 Comment *l.*

**7.** *Barthes* involved an injury where ammonia (apparently liquid) escaped from a tank used to refrigerate ice cream, the escape being due to a pipe breaking as a result of crystallization of the ammonia. The case was tried on a negligence theory, and the Mississippi Supreme Court affirmed a judgment on the verdict for the plaintiff, stating, *inter alia,* that the defendant ice cream plant owner owed the plaintiff, an em-

ployee of an independent contractor working on the premises, *"the duty of exercising reasonable care* to prevent ... [his] being injured by any defect in the premises or its machinery" and that "[c]haracteristics of ammonia are such that exposure thereto is imminently dangerous to human life, and the appellant was charged with the duty of using such *reasonable* precautions against its escaping from the tank as well-known scientific facts afforded." 155 So. at 224 (emphasis added). We do not read *Barthes* as authority for the proposition that liability without fault under the doctrine of *Rylands* extends to the storage of anhydrous ammonia; here, of course, the jury acquitted Bower of negligence, which was the basis for recovery in *Barthes.*

drous ammonia would result in great harm is small. *See Restatement* § 520(b). Additionally, exposure to toxic concentrations can be avoided by moving away from the close proximity of the source of the gas once its odor is detected, so that the risk of serious injury from anhydrous ammonia can be largely eliminated by "the exercise of reasonable care." *See id.* § 520(c). Moreover, since anhydrous ammonia is commonly used in a wide variety of agricultural, industrial, and commercial applications, its storage, even in large quantities, can hardly be said to be "not a matter of common usage." *See id.* § 520(d). Finally, and significantly, the ammonia supplied by Bower was stored and used in a commercial manufacturing plant. This case, therefore, does not involve an activity conducted in an inappropriate location. *See id.* § 520(e); *see also Prosser & Keeton on Torts, supra,* § 78 (stating that such inappropriateness is necessary for strict liability under *Rylands* ).

Consideration of the factors emphasized in modern cases applying *Rylands* and set forth in the *Restatement* thus demonstrates that storage of ammonia under the circumstances of this case does not constitute an abnormally dangerous, or ultra-hazardous, activity. We predict that if

**8.** We note that despite the widespread use of anhydrous ammonia, our research located no decision in which a court deemed use or storage of anhydrous ammonia to be an abnormally dangerous activity for strict liability purposes. Indeed, we found only two cases where a plaintiff alleged strict liability under a *Rylands* theory for injuries from ammonia exposure, and in both of these the court rejected the claim with little difficulty. *See Cropper,* 542 F.Supp. at 1149; *Schuette v. Mid-America Pipeline Co.,* 678 P.2d 634 (Kan. 1984).

**9.** The district court granted the directed verdict against Sprankle on the basis of its finding that Reichhold—not Bower—was the entity that had stored the ammonia. Sprankle also challenges this finding. Because we conclude that storage of anhydrous ammonia under the circumstances presented in this case was not an abnormally dangerous activity, however, we need not address Sprankle's contention that it was Bower who engaged in the activity. Whether carried on by Bower or Reichhold, storage of the ammonia was not an activity to which strict liability attached under *Rylands* and *Restatement* § 519.

presented with the issue, the Mississippi Supreme Court would in all likelihood refuse to extend the doctrine of *Rylands* to cover this situation.[8] We therefore conclude that the district court properly directed a verdict against Sprankle on the strict liability for abnormally dangerous activities theory of recovery.[9]

### III. *OSHA Regulations*

Before trial, Bower filed a motion asking the district court to exclude certain evidence that Sprankle anticipated using. The evidence consisted of Occupational Safety and Health Administration (OSHA) regulations governing the storage and handling of anhydrous ammonia, *see* 29 C.F.R. § 1910.111, and sanctions imposed by OSHA on Reichhold for violating those regulations. The district court issued an order *in limine* excluding the OSHA regulations from evidence, but allowing Sprankle's expert to use the OSHA standards and violations as underlying data for his opinion. In this order, the district court concluded that because the danger of the jury placing undue emphasis on the OSHA regulations substantially outweighed their probative value, they should be excluded pursuant to Fed.R.Evid. 403.[10]

**10.** The district court reasoned that "[t]he unfair prejudice would stem from the fact that Bower Ammonia would have the burden of overcoming the admission of safety standards not directly applicable to them." This is so because the Occupational Safety and Health Act of 1970, pursuant to which OSHA promulgated the regulations, imposes safety standards only on *employers, see* 29 U.S.C. § 666 (1985); since Bower was not Sprankle's employer, OSHA's safety standards do not apply directly to Bower. *See also Rabon v. Automatic Fasteners, Inc.,* 672 F.2d 1231, 1238 n. 15 (5th Cir. Unit B 1982); *Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706, 710–12 (5th Cir. Unit A 1981). Furthermore, said the district court, "the jury would undoubtedly place great weight upon the fact that OSHA is a government agency which follows government regulations. While the regulations do not have the force of law, a lay venireman could not possibly be expected to make the distinction between regulations and law." In addition, the district court reasoned, "[c]onfusion of the jury would also result. The jury would be read a regulation by an expert and be told that the regulation has been violated. In spite of any curative instruction, the jury would

On appeal Sprankle argues that the district court abused its discretion in excluding this evidence. We disagree. We have previously held on numerous occasions that Rule 403 determinations are "often inextricably bound with the facts of a particular case and thus will not be disturbed on appeal absent a showing of 'clear abuse.'" *Shipp v. General Motors Corp.*, 750 F.2d 418, 427 (5th Cir.1985); *see also, e.g., Jackson v. Johns-Manville Sales Corp.*, 750 F.2d 1314, 1319 (5th Cir.1985); *Wright v. Hartford Accident & Indem. Co.*, 580 F.2d 809, 810 (5th Cir.1978). Sprankle has failed to make such a showing. We believe the district court acted within its discretion in determining that it would be unfairly prejudicial and misleading to allow Sprankle to use the OSHA regulations.

Even if the district court's exclusion of the evidence was erroneous, the error would not require reversal unless it adversely affected the substantial rights of the complaining party. *See* Fed.R.Civ.P. 61; *Koonce v. Quaker Safety Prods. & Mfg. Co.*, 798 F.2d 700, 720 (5th Cir.1986). Sprankle sought to use the OSHA regulations to show that Bower's storage tanks were unsafe. He introduced other evidence of the deficiencies in the condition of the tanks, including testimony by an expert witness. Considering the record as a whole, therefore, we conclude that exclusion of the OSHA regulations did not unfairly prejudice Sprankle's case.

### Conclusion

We reject Sprankle's claims of error and affirm the judgment of the district court.

AFFIRMED.

retire to render its decision not sure whether the court's instruction on negligence should be followed."