611 So.2d 95 (1992)
Robert B. RACKLEFF, Jo Ellen Rackleff, David Mignano, Friends of Lloyd, Inc., and Council of Neighborhood Associations of Tallahassee/Leon County, Appellants,
v.
TEXACO TRADING AND TRANSPORTATION, INC., Mordaunt Bishop, not individually but in his capacity as Chairman of the County Commission of Jefferson County, and Jefferson County, Florida, and Bill Bassett, in his capacity As Chairman of the Jefferson County Planning Commission, the Jefferson County Planning Commission, an agency of Jefferson County, Florida, and William Bullock, not individually, but as the chief building official of Jefferson County, Appellees.
No. 91-2021.
District Court of Appeal of Florida, First District.
December 31, 1992.
*96 S. Craig Kiser, Tallahassee, for appellants.
Wilfred C. Varn and Thomas M. Ervin, Jr., of the Law Firm of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, and T. Buckingham Bird, Monticello, for appellees Jefferson County, Bishop, Bassett and Bullock.
Guyte P. McCord, III, of Macfarlane, Ferguson, Allison & Kelly, Tallahassee, for appellee Texaco Trading and Transp.
BARFIELD, Judge.
Appellants seek review of an order granting motions for summary judgment in favor of appellees. Appellants argue that the trial judge abused his discretion by granting summary judgment when discovery had not been completed. Appellants also argue that there were disputed issues of material fact. We affirm.
Texaco Trading and Transportation Inc. [TTTI] filed an application for land use change with the Jefferson County Commissioners. TTTI plans to construct and operate a petroleum wholesale distribution terminal. Appellants filed a complaint for injunctive relief seeking to enjoin the proposed land use change and the TTTI project, alleging that the project would constitute a nuisance. Appellants' second amended complaint was filed on January 24, 1990.
On August 31, 1990, appellants filed a motion to compel discovery. The parties later filed a stipulation, in the form of an order, which provided that TTTI would voluntarily produce certain items requested for production by December 10, 1990. The order provided that in the event appellants were not satisfied with the extent of documents produced by TTTI, appellants would attempt to secure further production by a renewed motion to compel. The matter was set for nonjury trial on May 13, 1991.
TTTI filed a motion for summary judgment on March 20, 1991. Appellants filed a second request for production on March 26, 1991. On April 17, 1991, an order was filed indicating that the parties had agreed to a one-week extension within which to complete discovery. A hearing was held on the motions for summary judgment in mid-April. Appellants filed a motion to compel discovery on April 26, 1991. The trial court granted the motions for summary judgment on April 30, 1991. On May 2, 1991, the trial court set aside summary judgment for the purpose of allowing the completion of existing outstanding discovery. TTTI responded to the request for production of documents on May 6, 1991. Appellants filed another motion to compel discovery on May 9, 1991, and a hearing was held on May 10, 1991.
After argument by counsel, the trial judge denied the motion to compel. The trial judge specifically found that there had not been a violation of discovery rules. Appellants did not appeal this ruling. Accordingly, it does not appear that the trial judge abused his discretion in granting the motions for summary judgment while appellants had discovery pending.
*97 We also reject appellants' argument that summary judgment was improper because there were disputed issues of material fact on probable risks of catastrophic injuries to groundwater and aquifers from storage tank leaks or spills. As the trial judge noted in the initial order granting summary judgment and at the final hearing before him on this matter, "Essentially, the [appellants] contend that the projected facility has the potential to amount to a public and private nuisance." He noted that appellants imply that the proposed facility is not a nuisance per se, but that its proposed location coupled with potential disasters, transforms the proposed facility into a nuisance. The trial judge correctly determined that although the competing affidavits contain contrary contentions, they do not create material issues of fact precluding summary judgment in this case because the issue is strictly a matter of law.
The issue presented essentially is whether an activity which is not a nuisance per se may be enjoined on the grounds that it has the potential of becoming a nuisance under particular circumstances or scenarios. The trial judge correctly concluded that injunctive relief should not be granted in such a circumstance. In National Container Corporation v. State, 138 Fla. 32, 189 So. 4 (1939), the supreme court noted that the statute which gives a citizen the right to sue if a nuisance actually exists also contemplates a threatened nuisance. The supreme court stated:
In using the language "threatened nuisance" herein we do not mean a mere threat to do a thing which may result in the creation of something which may be a nuisance, but we contemplate by this language the beginning of construction or the proceeding with plans which, if consummated, will necessarily result in the creation of a public nuisance.
Appellants concede that they cannot prevail under this standard. Appellants acknowledge that petroleum storage facilities are lawful activities under present Florida law and as such, normally can be challenged as nuisances only after they have started operation and there is evidence of actual harm. The injuries which appellants allege are threatened by the TTTI project "vary in their probability of occurrence as well as in their extent of injury." Initial brief at 11.
Appellants' reliance on City of Miami Beach v. Texas Company, 141 Fla. 616, 194 So. 368 (1940), is misplaced. The City of Miami Beach enacted an ordinance prohibiting storage of petroleum products north of a certain line. The supreme court first determined that the City had authority to enact the ordinance. The supreme court then determined that application of the ordinance to the previously existing facility of The Texas Company was arbitrary, noting that the record supported the determination below that the gasoline stored in the tanks was not dangerous per se and that the facility did not constitute a nuisance in fact as a result of its management and operation.
Appellants emphasize that portion of the Texas Company decision in which the supreme court observed:
If the increase in population continues at Miami Beach; or if the present rate of building or construction is continued; or if The Texas Company fails or otherwise omits to maintain the present standard of public safety in and about the bulk plant; or if changed conditions, or other things, occur which may be reasonably calculated to increase the hazard or danger of the people of Miami Beach by the maintenance and operation of the aforesaid bulk plant, then the City of Miami Beach can and is hereby reserved the right to take such legal steps as may be necessary to enforce the Ordinance for the safety and protection of the people of Miami Beach.
194 So. at 378. Appellants argue that this sets forth a relative or probable hazards and consequences standard. We disagree. This portion of the decision appears to be nothing more than an observance by the supreme court that if circumstances changed such that the maintenance and operation of facility of The Texas Company became a nuisance in fact, the City of Miami would then be able to prohibit operation of the facility pursuant to the ordinance at issue.
*98 Appellants contend that the standard set forth in National Container should be relaxed in order to make nuisance law more serviceable for addressing threatened or anticipatory nuisances in complex environmental disputes. This Court is constrained to follow decisions of the Florida Supreme Court. We accordingly decline appellants' invitation to expand the conditions which may warrant the enjoining of prospective harm. The appealed order is
AFFIRMED.
ZEHMER and WOLF, JJ., concur.