James PETERS, et al., Plaintiffs,

v.

AMOCO OIL COMPANY,
et al., Defendants.

No. Civ.A. 96–D–940–N.

United States District Court,
M.D. Alabama,
Northern Division.

June 21, 1999.

John Q. Somerville, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, Larry Wade Morris, Morris, Haynes, Ingram & Hornsby, Alexander City, AL, Fred D. Gray, Gray, Langford, Sapp, McGowan, Gray & Nathanson, Tuskegee, AL, Timothy J. Crowley, Richard E. Norman, Crowley & Douglas, LLP, Houston, TX, Leslie Elizabeth McFall, Langston, Frazer, Sweet & Freese, P.A., Birmingham, AL, Morris A. Ratner, Fabrice V. Nihof, Elizabeth J. Cabraser, Lieff, Cabraser, Heimann & Bernstein, San Francisco, CA, Mitchell A. Toups, Weller, Green, McGown & Toups, Beaumont, TX, Dennis Reich, Reich & Binstock, Houston, TX, Russell Jackson Drake, Joe R. Whatley, Jr., Peter Harrington Burke, Whatley Drake, L.L.C., Birmingham, AL, Frederick T. Kuykendall, III, Gardner Middlebrooks Fleming Gibbons & Kittrell, PC, Birmingham, AL, Kenneth Ingram, Jr., Kenneth Ingram, Jr. & Associates, PC, Alexander City, AL, for James Peters plaintiff.

Larry Wade Morris, Fred D. Gray, Timothy J. Crowley, Richard E. Norman, Leslie Elizabeth McFall, Morris A. Ratner, Fabrice V. Nihof, Elizabeth J. Cabraser, Mitchell A. Toups, Dennis Reich, Russell Jackson Drake, Joe R. Whatley, Jr., Peter Harrington Burke, Frederick T. Kuykendall, III, Kenneth Ingram, Jr., Kenneth Ingram, Jr. & Associates, PC, Alexander City, AL, for Alma Peters, Tommy Peters, Buddy Lynn, Janet Lynn, Robert Pate, Jr., Archie L. Blakely, Will R. Peterson, Ola Mae Wells, Rufus James Vanable, Gloria W. Mobley, Johnnie E. Williams, Earl C. Cunningham, James M. Cockerham, Winnie Tyler, Jimmie Jennings, Tara S. Hedge, Neil H. Butler, Annette M. Fox, Charles A. Raffael, Maureen D. Raffael, Clark's Liquors, Inc., Lamiad Jareanvai, Brian A. Yakimowsky, Carol A. Yakimowsky, Guy R. Chiapponi, Sutanna Chiapponi, Robert M. Selby, Annie M. Reed, Kevin

Slamin, Montgomery Motel Partnership, plaintiffs.

Fred D. Gray, Timothy J. Crowley, Richard E. Norman, Richard A. Freese, T. Roe Frazier, Leslie Elizabeth McFall, A. Hoyt Rowell, Richard Akel, Robert Lieff, William H. Garvin, III, Russell Jackson Drake, Joe R. Whatley, Jr., Peter Harrington Burke, Frederick T. Kuykendall, III, Kenneth Ingram, Jr. & Associates, PC, Alexander City, AL, for Ronnie E. Chappell, on behalf of himself and as representative of a class of persons similarly situated, plaintiff.

Richard Eldon Davis, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, J. Andrew Langan, Richard C. Godfrey, J. Robert Robertson, Catherine L. Fitzpatrick, Scott W. Fowkes, Kirkland & Ellis, Chicago, IL, Sandy G. Robinson, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Mobile, AL, Roland Karl Filippi, Chicago, IL, for Amoco Oil Company, defendant.

Donald R. Jones, Jr., Balch & Bingham, Montgomery, AL, S. Allen Baker, Jr., Balch & Bingham, Birmingham, AL, William R. O'Brien, Robert H. Shulman, Mindy G. Davis, Howrey & Simon, Washington, DC, Richard E. Wallace, Jr., Anthony F. King, Wallace King Marraro & Branson, PLLC, Washington, DC, for Texaco Refining and Marketing, Inc., defendant.

William J. Stack, Exxon Company U.S.A., Houston, TX, Clement C. Torbert, Jr., Clement C. Torbert, Jr., Peter S. Fruin, Maynard, Cooper & Gale, P.C., Montgomery, AL, Gregory H. Hawley, H. Thomas Wells, Jr., Maynard, Cooper & Gale, P.C., Birmingham, AL, Stephen Cann Dillard, Lance L. Shea, Fulbright, Jaworski, Houston, TX, Robert Gilchrist Newman, Fulbright, Jaworski, San Antonio, TX, James Michael Cawley, Jr., Shell Oil Company Products—Legal, Houston, TX, for Exxon Corporation dba Exxon Company USA, defendant.

Clement C. Torbert, Jr., Clement C. Torbert, Jr., Peter S. Fruin, Gregory H.

Hawley, H. Thomas Wells, Jr., Maynard, Cooper & Gale, P.C., Montgomery, AL, for Tenneco Inc., Shell Oil Co., defendants.

Donald R. Jones, Jr., S. Allen Baker, Jr., William R. O'Brien, Robert H. Shulman, Mindy G. Davis, Richard E. Wallace, Jr., Anthony F. King, Wallace King Marraro & Branson, PLLC, Washington, DC, for Star Enterprises, defendant.

Clement C. Torbert, Jr., Peter. S. Fruin, J. Alan Truitt, Maynard, Cooper & Gale, P.C., Birmingham, AL, Kirk G. Forrest, MAPCO Petroleum, Inc., Tulsa, OK, Roianne Houlton Frith, The Law Offices of Roianne Houlton Frith & Associates, Montgomery, AL, for MAPCO Petroleum, Inc., defendant.

Linda A. Friedman, John E. Goodman, Sid J. Trant, James F. Archibald, III, Bradley, Arant, Rose & White, Birmingham, AL, Stephen Cann Dillard, Lance L. Shea, Fulbright, Jaworski, Houston, TX, Robert Gilchrist Newman, Fulbright, Jaworski, San Antonio, TX, for Chevron, USA, Inc., defendant.

John E. Goodman, Sid J. Trant, Bradley, Arant, Rose & White, Birmingham, AL, for Chevron USA Products Company, defendant.

Clement C. Torbert, Jr., Peter S. Fruin, Gregory H. Hawley, H. Thomas Wells, Jr., Maynard, Cooper & Gale, P.C., Birmingham, AL, for Shell Oil Products Company, defendant.

A. Danner Frazer, Jr., Frazer, Greene, Upchurch & Baker, Mobile, AL, Stephen Cann Dillard, Lance L. Shea, (See above), for Phillips Petroleum Company, defendant.

Clement C. Torbert, Jr., Peter S. Fruin, Gregory H. Hawley, H. Thomas Wells, Jr., Maynard, Cooper & Gale, P.C., Birmingham, AL, Stephen Foster Black, Maynard, Cooper & Gale, P.C., Birmingham, AL, Wesley C. Redmond, N. Andrew Rotenstreich, Berkowitz, Lefkovits, Isom & Kushner, Birmingham, AL, Craig J. De Recat, Peter R. Duchesneau, Manatt, Phelps &

1273</>

Phillips, Los Angeles, California, for Diamond Shamrock Refining and Marketing Company, defendant.

Donald R. Jones, Jr., S. Allen Baker, Jr., William R. O'Brien, Robert H. Shulman, Mindy G. Davis, Richard E. Wallace, Jr., Wallace King Marraro & Branson PLLC, Washington, DC, for Unocal Service Corporation, defendant.

John M. Johnson, John Q. Somerville, Lightfoot, Franklin & White, Birmingham, AL, Charles L. Berry, Vinson & Elkins, L.L.P., Houston, TX, for Fina Oil and Chemical Company, defendant.

Richard Eldon Davis, Sandy G. Robinson, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, AL, Stephen Cann Dillard, Lance L. Shea, Fulbright Jaworski, Houston, TX, Kevin E. Maldonado, Peter John Sacripanti, Dean A. Weber, McDermott, Will & Emery, New York City, Robert William Johnson, Woodlands, TX, for Mobil Oil Corporation, defendant.

John M. Johnson, John Q. Somerville, Lightfoot, Franklin & White, Birmingham, AL, Nathan P. Eimer, Scott Charles Solberg, Philip Pendleton Steptoe, Sidley & Austin, Chicago, IL, for Citgo Petroleum Corporation, defendant.

Ronald Wayne Wise, Wise & Bowen, Montgomery, AL, Michelle A. Wenzel, Beveridge & Diamond, P.C., Washington, DC, Joseph D. Zulli, Sun Company, Inc. (R & M), Philadelphia, PA, Robert Brager, Mark A. Turco, Beveridge & Diamond, Baltimore, MD, Michael Kuritzkes, Sun Company, Incm, Law Department, Philadelphia, PA, for Sun Company, Inc., defendant.

Joseph Lister Hubbard, Thomas S. Lawson, Jr., Capell & Howard, PC, Montgomery, AL, Van H. Beckwith, Larry D. Carlson, Steve Schortgen, Baker & Botts, LLP, Dallas, TX, Robert N. Price, Tulsa, OK, for Occidental Petroleum Services, Inc., defendant.

Donald R. Jones, Jr., S. Allen Baker, Jr., William R. O'Brien, Robert H. Shulman, Mindy G. Davis, Marcia P. Kaplan, How-rey & Simon, Washington, DC, Richard E. Wallace, Jr., Wallace King Marraro & Branson PLLC, Washington, DC, for Atlantic Richfield Company, defendant.

Clement C. Torbert, Jr., Montgomery, AL, Peter S. Fruin, Birmingham, AL, J. Alan Truitt, Kirk G. Forrest, Roianne Houlton Frith, for Williams Company, defendant.

Thomas L. Johnston, Alabama Department of Environmental Management, Montgomery, AL, for Alabama Department of Environmental Management, amicus.

F. Perry Odom, State of Florida, Department of Environmental Protection, Tallahassee, FL, for Florida Department of Environmental Protection, amicus.

## ORDER

MYRON H. THOMPSON, District Judge.

After an independent review of the file, it is ORDERED as follows:

(1) The recommendation of the United States Magistrate Judge entered on March 17, 1999 (Doc. no. 267), is adopted.

(2) The joint motion to dismiss filed by the defendants on March 3, 1998 (Doc. no. 231), is denied.

The clerk of the court is DIRECTED to furnish a copy of this order to counsel for the parties by facsimile transmittal.

## RECOMMENDATION OF THE MAGISTRATE JUDGE

CARROLL, United States Magistrate Judge.

This cause is currently pending before the court on Defendants' Joint Motion To Dismiss The Revised Second Amended Complaint ("Motion To Dismiss"), filed

March 3, 1998.[1] Defendants filed their First and Second Memoranda In Support Of Defendants' Joint Motion To Dismiss ("Defs.' First Mem." and "Defs.' Second Mem.," respectively) on March 16, 1998. Plaintiffs filed Parts I and II of their Memorandum In Opposition To Defendants' Joint Motion To Dismiss on April 10, 1998, which the court construes as Plaintiffs' Response ("Pls.' Resp. Part I" and "Pls.' Resp. Part II," respectively). Defendants filed both their First and Second Reply Briefs In Support Of Defendants' Joint Motion To Dismiss ("Defs.' First Reply" and "Defs.' Second Reply," respectively) on April 29, 1998. A hearing was held on the Defendants' Motion to Dismiss on May 5, 1998. After careful consideration of the briefs and arguments of counsel, the relevant law, and the record as a whole, it is the recommendation of the Magistrate Judge that Defendants' Motion To Dismiss be denied.

## MOTION TO DISMISS STANDARD

Defendants argue that, pursuant to Federal Rule of Civil Procedure 12(b), Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., U.S. v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir.1993); *see also Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989).

On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant must "sustain[ ] a very high burden." *In re Johannessen*, 76 F.3d 347, 349 (11th Cir.1996) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "Motions to dismiss for failure to state a claim should be denied unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims." *Johannessen*, 76 F.3d at 349 (quoting *Conley*, 355 U.S. at 45, 78 S.Ct. 99); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## FACTUAL BACKGROUND[2]

Defendants are oil companies doing business throughout the United States. Plaintiffs are property owners from Alabama, Florida, Massachusetts, and Mississippi with property situated near underground storage tanks ("UST's") owned, leased, or controlled by Defendants. These UST's, which are used to store petroleum products such as gasoline and used oil, have each had confirmed leaks and have been assigned an incident number by either the Environmental Protection Agency ("EPA") or a State Environmental Agency ("SEA"). The leaks from these UST's either have already contaminated or threaten to contaminate Plaintiffs' property.

The installation of the UST's that are the subject of this litigation began early in this century, and these UST's were increasingly used in the 1950's and 1960's.

1. This Motion To Dismiss was filed by Defendants Amoco Oil Company, Atlantic Richfield Company, B.P. Exploration & Oil Company, Chevron, USA, Inc., Citgo Petroleum Corporation, Conoco, Inc., Exxon Corporation, Fina Oil Company, Mapco Petroleum, Mobil Oil Corp., Occidental Petroleum, Phillips Petroleum, Shell Oil Products, Star Enterprises, Sun Company, Inc., Tenneco Inc., Texaco Refining Inc, and Unocal Service Corp (collectively, "Defendants").

2. This Factual Background comes from the allegations in the Plaintiffs' Complaint. As noted above, in ruling on a motion to dismiss, these allegations are taken as true.

Constructed of bare steel, over time these UST's have corroded and begun to leak. By the late 1970's and early 1980's, many of the UST's had reached the end of their useful lives.

Over the history of the installation and leakage of these UST's, Defendants have maintained contact and interacted with each other through their membership in the American Petroleum Institute ("API"). During the relevant time period, the API published articles, reported studies, and sponsored speakers addressing the emerging problem of leaking UST's.

The danger of the leakage of these tanks, as well as their actual leakage, has been publicized in a variety of national sources and fora over the course of this century. The National Fire Protection Association has warned Defendants of the dangers of leaking UST's several times. Public speakers, commentators, and public agencies have described and tracked this problem, and various preventative measures and clean-up options have been suggested.

Since approximately 1965, alternatives to the bare steels tanks used by Defendants that would better resist corrosion have been available. Defendants neither implemented the use of such alternatives nor attempted to retard the corrosion on the leaking tanks; rather, Defendants relied on their programs of inventory control to detect leaks. Such methods of leak detection were not sufficiently accurate to detect many smaller leaks.

The Plaintiffs originally filed this action in the Circuit Court of Coosa County on May 7, 1996. The action was removed to the district court on grounds of diversity on June 6, 1996. Plaintiffs filed a Second Amended Complaint in this court on February 2, 1998. In Count One of the Second Amended Complaint, Plaintiffs allege that Defendants have trespassed on Plaintiffs' property [3] through the leakage of the UST's and the contamination resulting therefrom. In Count Two, Plaintiffs allege that the leaking UST's constitute an actionable nuisance. In Count Three, Plaintiffs allege that Defendants have fraudulently concealed the emerging problem of leaking UST's and contamination therefrom. In Count Four, Plaintiffs allege that Defendants have engaged in a civil conspiracy to commit the trespass, nuisance, and fraud described in Counts One through Three. In Counts Five and Six, Plaintiffs allege that Defendants have been negligent and grossly negligent, respectively, in allowing the leakage of the UST's and consequent contamination of Plaintiffs' property. Finally, in Count Seven, Plaintiffs allege that Defendants are strictly liable for the contamination caused by the leakage of their UST's.

Plaintiffs seek to bifurcate the proceedings into two phases. In Phase One of the litigation, Plaintiffs seek injunctive relief compelling Defendants to inspect their properties for contamination and to report the results of said inspections. In Phase Two of the litigation, Plaintiffs seek to obtain compensatory damages, exemplary damages, and clean up costs for those Plaintiffs who have been impacted by Defendants' leaking UST's.

## DISCUSSION

Defendants have advanced arguments supporting their motion to Dismiss in two separate supporting briefs. In the following Recommendation, the court addresses Defendants' arguments presented in their First Memorandum in Support.[4]

---

**3.** The Second Amended Complaint alleges that the trespass was done deliberately, willfully, wantonly, and with gross and reckless disregard.

**4.** As noted below, the court does not address the matters contained in Defendants' Second Memorandum in Support, as the court finds the arguments contained therein to be more appropriate for summary judgment treatment. *See* § II., infra.

## I. WHETHER PLAINTIFFS STATE VALID CLAIMS AGAINST DEFENDANTS

Defendants contend that "the claims of the named Plaintiffs should be dismissed because they have not stated valid individual claims against any Defendant." (Defs.' First Mem. at 13.) First, Defendants argue that Plaintiffs fail to state a cause of action against each individual Defendant because Plaintiffs "cannot rely on general allegations that 'defendants' collectively have breached some duty to the plaintiff." (Defs.' First Mem. at 16.) Second, Defendants claim that Plaintiffs fail to allege essential facts about the named Plaintiffs. Third, Defendants claim that Plaintiffs fail to state the requisite elements of each claim against any Defendant. Finally, Defendants argue that Plaintiffs do not have standing. The court considers these claims below.

### A. Whether Plaintiffs Sufficiently Address Particular Defendants

Defendants claim that Plaintiffs fail to state claims because their claims are brought against "Defendants" generally, rather than against each Defendant specifically. (Defs.' First Mem. at 15.) "A plaintiff may not simply list a number of defendants and allege generally that 'the defendants' breached some duty owed to the plaintiff." (*Id.*) Plaintiffs contend that "Defendants misstate the law regarding the appropriateness of referring to the defendants' as a group when describing their identical misconduct" (Pls.' Resp. Part I at 7), and claim that, given the contents of their Complaint in their entirety, "plaintiffs do not need to specifically name each defendant when using the word 'defendants' in the complaint." (Pls.' Resp. Part I at 11.) The court agrees with Plaintiffs.

The Federal Rules of Civil Procedure generally allow for liberal pleadings: "A pleading which sets forth a claim for relief ... shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a); *see also Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir.1997) (noting that, "under the liberal requirements of notice pleading, '[n]o technical forms of pleading ... are required' ") (quoting Fed.R.Civ.P. 8(a)).

Pursuant to the general liberal pleading requirement of Rule 8(a), general use of the term "defendants" may be sufficient. For instance, in *Crowe*, the Eleventh Circuit considered whether the plaintiffs had sufficiently stated a cause of action against a defendant who the other defendants claimed was fraudulently joined, where the allegations of the complaint referred to "defendants" generally rather than specifying the individual defendants by name. 113 F.3d at 1539. The Eleventh Circuit held that, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Id.* In the instant case, the court finds that, for Plaintiffs' claims of trespass, nuisance, conspiracy to create trespass and nuisance, negligence, gross negligence, and strict liability, Plaintiffs' use of the general term "Defendants" is sufficient.

For fraud and conspiracy to commit fraud claims, the Federal Rules of Civil Procedure contain a heightened pleading requirement. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); *see also Cooper v. Blue Cross & Blue Shield*, 19 F.3d 562, 568 (11th Cir.1994). However, this court has determined previously that each defendant need not be named separately in each cause of action where certain conditions are satisfied. For instance, in *General Cigar Co. v. CR Carriers, Inc.*, the court was asked to determine whether the plaintiffs sufficiently alleged that the defendants sent fraudulent invoices

through the United States mails, where the plaintiffs failed to separately name each defendant in the amended complaint. 948 F.Supp. 1030, 1037 (M.D.Ala.1996). In making its decision, the court considered the purpose underlying Fed.R.Civ.P. 9(b):

> [S]ince Rule 9(b)'s purpose is to ensure the defendants are notified of the conduct complained of, alleged fraudulent acts need not be attributed to certain defendants if the 'complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations.'

*Id.* (quoting *Hinsdale Women's Clinic, S.C. v. Women's Health Care*, 690 F.Supp. 658, 663 (N.D.Ill.1988)). The court determined that, "even if the Plaintiff does not indicate by which of the two individual defendants the invoice was submitted, the Defendants are able to answer the allegations." *Id.* at 1037–1038.

Further, the court notes that there are circumstances under which "a plaintiff may not be able to plead the precise role of each defendant when a group of defendants has acted in concert to cause the complained of injury." *Jackson v. First Fed. Sav.*, 709 F.Supp. 863, 878 (E.D.Ark. 1988). Under such circumstances, "it is appropriate to plead the actions of the group and leave development of individual liability questions until some discovery has been undertaken, rather than to dismiss the plaintiff because he does not have what may be concealed information." *Id.; see also In re AnnTaylor Stores Securities Litig.*, 807 F.Supp. 990 (S.D.N.Y.1992).

█ In the instant case, the court concludes that Plaintiffs' claims of fraudulent concealment and conspiracy to commit fraudulent concealment sufficiently allege that Defendants acted as a group and are of the type envisioned by the *Jackson* court. Further, these claims provide each individual Defendant with sufficient notice and information to answer the allegations contained therein. Therefore, Plaintiffs' claims are not due to be dismissed based on Plaintiffs' failure to specify particular defendants.

**B. Whether Plaintiffs Allege Sufficient Facts About Plaintiffs**

Defendants claim that the Complaint is "almost completely devoid of any factual allegations about the named plaintiffs or their properties." (Defs.' First Mem. at 6) As noted by Plaintiffs, however, Defendants "fail to identify a *single* relevant 'essential fact' that is not addressed with specificity." (Pls.' Resp. Part I at 7 (emphasis in original).)

Upon review of Defendants' moving papers, the court finds that Defendants have not identified any relevant, essential facts that are not addressed with specificity. Consistent with the liberal pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure, the court finds that Defendants' argument is unpersuasive, and Plaintiffs' claims are not due to be dismissed on this ground.

**C. Whether Plaintiffs Sufficiently Plead Elements Of Trespass and Nuisance Causes Of Action**

Defendants argue that Plaintiffs fail to state a claim for trespass and nuisance because the Complaint "does not allege actual damage to the properties of the named plaintiffs." (Defs.' First Mem. at 10.) The court is unpersuaded by this argument because, in Phase I, Plaintiffs seek only mandatory injunctive relief, and the four relevant jurisdictions do not require actual damages to provide such relief. Whether damages are ultimately available is an issue which may be decided later. The availability of injunctive relief is sufficient for the case to proceed at this juncture.

In Phase I, Plaintiffs seek injunctive relief in the following form:

> an order requiring [ ] each and all Defendants to test, by the use of spot wells or other plum[e] mapping technology, for the presence of contamination at any

property boundary of a site which borders on a [named Plaintiff's][5] property, where the border is located within 250 feet of the site of the leaking UST system, or the known area of contamination.

(Compl. at 62.) This type of relief constitutes a mandatory injunction because it "orders a responsible party to 'take action' " rather than restraining a party from committing further violations. *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 484, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996).

■ Mandatory injunctive relief of this nature is permissible under the laws of the four relevant jurisdictions. In each jurisdiction, a plaintiff need not necessarily show actual harm because irreparable, imminent harm may suffice. Under Alabama law,

> a trial court must utilize a three-pronged test. (citation omitted) First, the trial court must determine whether a party has presented a fair question as to the existence of a right to be protected. Second, the injunction must be necessary to prevent an irreparable injury. Last, the injury threatened must be both imminent and irreparable in a court of law.

*Petroleum Equip. Tool Co. v. State Bd. of Health,* 567 So.2d 328, 330 (Ala.Civ.App. 1990) ("*PETCO* "). "[C]ourts will not use the extraordinary power of injunctive relief merely to allay an apprehension of a possible injury; the injury must be imminent and irreparable in an action at law." *Carson v. Prichard,* 709 So.2d 1199, 1207 (Ala.1998).

■ Massachusetts law provides that, to obtain a preliminary injunction, the moving party must demonstrate: (1) a likelihood of success on the merits, (2) irreparable harm, and (3) no chance of remediation by a final judgment in law or equity. *See McNeill v. New England Sch. of Law,* No.

940091, 1994 WL 879640, at *2 (Mass.Super. July 12, 1994) (citing *Commonwealth v. Massachusetts CRINC,* 392 Mass. 79, 466 N.E.2d 792, 797 (1984); *Packaging Indus. Group v. Cheney,* 380 Mass. 609, 405 N.E.2d 106, 112 n. 11 (1980)). Specifically, where the relief requested is mandatory in nature, "the burden of proof on the plaintiff is particularly heavy." *Id.*

■ Under Florida law, a temporary mandatory injunction may be issued where: "irreparable harm will result unless the status quo is maintained; a party has a clear legal right to the injunction; that party has no adequate remedy at law; and in certain cases, considerations of public interest." *Martin v. Pinellas County,* 444 So.2d 439, 441 (Fla.Dist.Ct.App.1983).

■ Mississippi law provides that "[a] mandatory injunction should be ordered where such is 'the only effective remedy' ... [and] only where that which they demand is reasonably practicable." *Hall v. Wood,* 443 So.2d 834, 841 (Miss.1983). "A mandatory injunction should not issue unless the right thereto is shown beyond a reasonable doubt, and irreparable injury would result unless issued." *Warrior, Inc. v. Easterly,* 360 So.2d 700, 703 (Miss.1978).

Plaintiffs claim that Defendants have committed "actual or the threat of imminent unauthorized and wrongful invasion and trespass by petroleum contamination into Plaintiffs' properties." (Compl.¶ 134.) Specifically, Plaintiffs allege that Defendants' actions "caused and continue[ ] to cause actual or the threat of imminent unauthorized and wrongful invasion and trespass by petroleum contamination into Plaintiffs' properties." (*Id.*) The Complaint further states that "[t]he Plaintiffs ... contend their property has been severely damaged by the nuisance, trespass, and fraud of the Defendants. In many cases groundwater and soil contamination

---

**5.** Plaintiff's prayer for relief requests that the testing be done on each Class member's property. Because the court has not yet addressed the issue of class certification, the court reads the Complaint as concerning only the named Plaintiffs for the purposes of the present Recommendation.

is or may in the future be present." (*Id.* ¶ 83.) Further, Plaintiffs claim that the contamination "has migrated, or threatens to migrate, nearby to and/or onto Plaintiffs' properties, thereby contaminating the soil and groundwater thereunder." (*Id.* ¶ 137.) Additionally, Plaintiffs claim that:

[a]s a direct and proximate result of Defendants' course of conduct, properties own[ed] by [Plaintiffs] have become contaminated, or are likely to become contaminated, due to their close proximity to the sites owned by Defendants.... Each [Plaintiffs'] property either is suffering, or is at significant risk of suffering, a trespass by contamination caused by Defendants. [Plaintiffs'] rights to the use and enjoyment of their property are substantially and wrongfully being interfered with by the fear of, or threat of, contamination from Defendants' sites.

(*Id.* ¶ 173.)

█ The court finds that Plaintiffs' allegations are not merely hypothetical, as claimed by Defendants. (Defs.' First Reply at 7.) Rather, the allegations state a present threat of imminent injury by trespass or nuisance and are thus sufficient to support claims for mandatory injunctions in each of the relevant jurisdictions.

Further, the court notes that each jurisdiction has permitted the issuance of mandatory injunctions for similar claims in the context of trespass and nuisance. For trespass claims, *see, e.g., Planned Parenthood League of Mass. v. Operation Rescue,* 406 Mass. 701, 550 N.E.2d 1361, 1368 n. 12 (1990) (stating that record could support issuance of injunction where "trial judge reasonably could have concluded that potential future acts of trespass ... might irreparably harm the plaintiffs"); *Davis v. Wilson,* 139 Fla. 698, 190 So. 716, 719 (1939) (injunction may issue where there is "trespass or threatened injury"); *Dean v. Coosa County Lumber Co.,* 232 Ala. 177, 167 So. 566, 572 (1936) (noting that "[f]ormerly indeed courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses. But now there is not the slightest hesitation if the acts done or threatened to be done to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in future."); *Henry v. Mobile & O.R. Co.,* 163 Miss. 354, 142 So. 11, 13 (1932) (stating that, "if the trespass is continuous in its nature, and repeated acts of trespass are done or threatened, ... the entire wrong may be prevented or stopped by injunction"). For nuisance claims, *see, e.g., City of Jackson v. Morley,* 606 F.Supp. 434 (S.D.Miss.1985) (applying Mississippi law) (stating that mandatory injunction may be entered for nuisance claim where there is present threat of future harm); *Parker v. Ashford,* 661 So.2d 213 (Ala.1995) (stating that injunction may be entered to prevent nuisance before it is commenced); *Rackleff v. Texaco Trading & Transp., Inc.,* 611 So.2d 95 ( Fla.Dist.Ct.App.1992) (stating that injunction may issue for threatened nuisance if such will necessarily result in the creation of nuisance); *Winchester v. O'Brien,* 266 Mass. 33, 164 N.E. 807 (1929) (stating that plaintiff "may have equitable relief by way of injunction to restrain threatened continuous or repeated trespasses or acts creating a nuisance").

Accordingly, the court finds that Defendants' Motion To Dismiss for failure to state sufficient harm is due to be denied.

### D. Whether Plaintiffs Sufficiently Plead Fraudulent Concealment

Defendants claim that Plaintiffs fail to state a valid claim for fraudulent concealment for three reasons: (1) Plaintiffs fail to plead fraudulent concealment with the particularity required by Fed.R.Civ.P. 9(b); (2) Plaintiffs fail to allege the requisite elements of fraudulent concealment under applicable state laws; and (3) Plaintiffs' own allegations contradict and preclude the claim for fraudulent concealment. As explained below, the court finds that Defendants' Motion To Dismiss Plaintiffs' claim of fraudulent concealment is due to be denied.

### 1. Whether Plaintiff Plead Fraudulent Concealment With The Particularity Required By Fed. R.Civ.P. 9(b)

Defendants argue that Plaintiffs' complaint fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b). (Defs.' First Mem. at 20–22.) Rule 9(b) of the Federal Rules of Civil Procedure provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R.Civ.P. 9(b). This Rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Brooks v. Blue Cross/Blue Shield,* 116 F.3d 1364, 1370–71 (11th Cir.1997) (citing *Durham v. Business Management Assoc.,* 847 F.2d 1505, 1511 (11th Cir.1988)). Further, "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Id.* (quoting *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 225 (S.D.N.Y.1989)); *see also Durham,* 847 F.2d at 1511 (stating that "[t]he application of [Rule 9(b) ] must not abrogate the concept of notice pleading").

Under current Eleventh Circuit law, Rule 9(b) may be satisfied if the complaint sets forth the following:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what Defendants "obtained as a consequence of the fraud."

*Brooks,* 116 F.3d at 1371 (citing *Fitch v. Radnor Industries, Ltd.,* No. 90–2084, 1990 WL 150110, at *2 (E.D.Pa. Sept. 27, 1990)). However, "alternative means are also available to satisfy the rule." *Id.* (citing *Durham,* 847 F.2d at 1512); *see also Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984) (holding that a list containing allegations of fraud describing nature and subject of statements was sufficient, even where precise words used were not alleged).

For instance, the heightened pleading requirement of Rule 9(b) "may be relaxed somewhat if the defendant controls information required for proper pleading." *United States v. East Ala. Healthcare Auth.,* 953 F.Supp. 1404, 1413 (M.D.Ala. 1996). The complaint, however, must still "adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Id.* (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield,* 755 F.Supp. 1040, 1052 (S.D.Ga. 1990) (*"Blue Cross"*)). Further, the complaint must also "allege that the necessary information lies within the defendant's control, and then allegations must be accompanied by a statement of facts upon which allegations are based." *Id.* (quoting *Blue Cross,* 755 F.Supp. at 1052).

In this case, the court applies the more relaxed Rule 9(b) analysis because Plaintiffs allege that Defendants have exclusive control of certain information required for proper pleading. Specifically, as alleged by Plaintiffs, Defendants are and have been in a superior position with respect to information regarding the alleged leakage, contamination, and fraud. (*See, e.g.,* Compl. ¶ 146.) Thus, Plaintiffs have appropriately alleged that the necessary information lies within the defendant's control, as required to gain the benefit of the more relaxed 9(b) standard.

Defendants' argument that Plaintiffs' fraudulent concealment claim is fatally defective is twofold: (1) "the complaint fails to identify the role and conduct of each of the 19 defendants in the alleged fraudulent concealment" (Defs.' First Mem. at 22); and (2) "the complaint does not allege the 'details' of each defendants' alleged fraud." (*Id.* at 21.) In addressing these arguments, the court finds persuasive the reasoning of the court in *Citizens State Bank v. Federal Deposit Ins. Corp.,* 639 F.Supp. 758 (W.D.Okla.1986). In *Citizens Bank,* the court determined the following:

> Defendants claim ... that the complaint fails to allege specifically which Defendant, at which point, played a role in the fraudulent concealment. However ... if conspiracies to conceal information are alleged, the facts to support such allegations are peculiarly within the knowledge of the Defendants; accordingly, motions to dismiss are inappropriate until discovery has been conducted.

639 F.Supp. at 762 (citing *Banowitz v. State Exch. Bank,* 600 F.Supp. 1466, 1469 (N.D.Ill.1985); *Pellman v. Cinerama, Inc.,* 503 F.Supp. 107, 111 (S.D.N.Y.1980)); *see also Chambers Dev. Co. v. Browning–Ferris Indus.,* 590 F.Supp. 1528 (W.D.Pa. 1984) (denying motion to dismiss based on Rule 9(b) where fraud is alleged and plaintiff contends that facts lie within exclusive control of defendants; also specifically allowing defendants to renew motion to dismiss based on Rule 9(b) after plaintiff has had opportunity to take discover for sixty days and file amended complaint); *Noonan v. Granville–Smith,* 537 F.Supp. 23 (S.D.N.Y.1981) (stating that "[w]hile we agree that these defendants are entitled to more enlightenment as to who is claimed to have done what, we think the plaintiffs should have discovery to assist them in making the necessary specifications").

In this case, the Plaintiffs have sufficiently pled that information is within the exclusive control of the Defendants. Consequently, Plaintiffs should have the opportunity to conduct discovery, and it is inappropriate to grant Defendants' Motion To Dismiss based on Rule 9(b) at this juncture.

**2. Whether Plaintiffs Sufficiently Allege The Requisite Elements Of Fraudulent Concealment Under Applicable State Laws**

Defendants claim that Plaintiffs fail to allege the requisite elements of fraudulent concealment under the applicable state laws. (Defs.' First Mem. at 22.) Specifically, Defendants claim that the Complaint:

> does not allege facts to show that any particular defendant had a duty to any plaintiff to disclose any specific fact; it does not allege that any named plaintiff was induced to take or forebear any specific action; it does not allege that any named plaintiff was prevented from discovering a claim, or even that any named plaintiff had a valid claim that was concealed; and it does not allege that the alleged concealment caused any named plaintiff any damages.

(Defs.' First Mem. at 23.) The court addresses these alleged deficiencies below.

**a. Elements Of Fraudulent Concealment Under Applicable State Laws**

The elements for a claim of fraudulent concealment or suppression are essentially the same in each of the relevant jurisdictions. Specifically, the elements are: (1) defendant has a duty to disclose; (2) defendant suppresses a material fact; (3) defendant's suppression of the material fact induces plaintiff to act or to refrain from acting; and (4) plaintiff suffers actual damage as a proximate result. *See, e.g., State Farm & Cas. Co. v. Owen,* No. 1961950, 1998 WL 515946, at *3 (Ala. Aug. 21, 1998); *Gutter v. Wunker,* 631 So.2d 1117, 1118 (Fla.Dist.Ct.App.1994); *Nota Constr. Corp. v. Keyes Assoc., Inc.,* 45 Mass.App.Ct. 15, 694 N.E.2d 401, 404 (1998); *Whittington v. Whittington,* 535 So.2d 573, 585 (Miss.1988), *overruled on*

*other grounds, C & C Trucking Co. v. Smith,* 612 So.2d 1092 (Miss.1992).

### b. Whether Plaintiffs Sufficiently Establish Duty To Disclose

Defendants contend that a duty to disclose has not been established under the law of the four jurisdictions at issue. (Defs.' First Mem. at 23; Defs.' First Reply at 16–19.) Plaintiffs respond that the "duty to disclose" inquiry is a factual analysis, and that they have "alleged facts giving rise to Defendants' duty to disclose." (Pls.' Resp. Part I at 38.) The court finds that Plaintiffs have alleged sufficient facts to give rise to a duty to disclose.

 Under the laws of the four relevant jurisdictions, a duty to disclose may exist where one voluntarily undertakes to speak but fails to prevent his or her words from being misleading, or where one party has knowledge of material facts to which the other party does not have access. *See, e.g., Simpson v. Sto Corp.,* 951 F.Supp. 202, 206 (M.D.Ala.1996), *aff'd,* 145 F.3d 363 (11th Cir.1998); *Thomas v. Halstead,* 605 So.2d 1181, 1184 (Ala.1992); *Hooper v. Barnett Bank of West Fla.,* 474 So.2d 1253, 1257 (Fla.Dist.Ct.App.1985); *V.S.H. Realty, Inc. v. Texaco, Inc.,* 757 F.2d 411, 414 (1st Cir.1985) (applying Massachusetts law); *Guastella v. Wardell,* 198 So.2d 227, 230 (Miss.1967).

 In the instant case, Plaintiffs allege the following:

> [B]y virtue of repeated statements acknowledging their responsibility to avoid petroleum discharges and to disclose and clean up petroleum discharges which have occurred, and by virtue of their superior and exclusive knowledge of and/or superior ability to discover leaking tanks, Defendants assumed and had a duty to disclose to Plaintiffs and the Class all material facts about the existence of actual and imminent UST discharges and resultant contamination

of soil and groundwater nearby to properties owned by Plaintiffs and the Class.

\* \* \* \* \* \*

> Defendants' knowledge of the material facts pertaining to the existence of thousands of leaking and potentially leaking USTs and resultant soil and groundwater contamination injuring Plaintiffs' and the Class's property was and is vastly superior to the knowledge of Plaintiffs and the Class. Similarly, Defendants have superior financial resources and exclusive custody and/or control of contamination sources which permit them to detect UST failures and resulting contamination and likewise create a duty to disclose.

(Compl.¶¶ 145–46.) Based on these allegations, the court finds that Plaintiffs have set forth facts demonstrating that Defendants spoke voluntarily. Further, Plaintiffs' allegations indicate that Defendants were in a superior position of power and knowledge in relation to Plaintiffs, and that they suppressed important facts concerning the leakage of contamination from the UST's. The relationship between the Parties is partially defined by the public statements made by Defendants. Further details of this relationship will be fleshed out as discovery proceeds, but, as to the sufficiency of the Complaint, the court finds that Plaintiffs have currently alleged all material facts supporting the duty to disclose as specifically as possible in light of the fact that Defendants supposedly control much of the information related to the alleged fraud.

### c. Whether Plaintiffs Sufficiently Allege The Elements Of Fraudulent Concealment

 Defendants claim that Plaintiffs fail to state a valid claim for fraudulent concealment because the Complaint "does not allege that any named plaintiff was induced to take or forebear any specific action; it does not allege that any named plaintiff was prevented from discovering a claim, or even that any named plaintiff had

a valid claim that was concealed; and it does not allege that the alleged concealment caused any named plaintiff any damages." (Defs.' First Mem. at 23.) The court finds that the face of the Complaint demonstrates that these elements are sufficiently pleaded.

First, the Complaint states that "Plaintiff class members reasonably relied upon Defendants' misrepresentations and upon Defendants' active, fraudulent concealment of Plaintiffs' injuries and claims to their detriment" (Compl.¶ 152), and that "Defendants' fraudulent concealment of the scope of contamination from Defendants' UST sites, has caused and continues to cause Plaintiffs to be unaware of the scope of contamination from Defendants' UST's." (*Id.* at ¶ 173.) The Complaint further states that "the continuing and ongoing conspiracy between and amongst Defendants has prevented and continues to prevent Plaintiffs from knowing of, or understanding, the scope of contamination or potential contamination on their property." (*Id.* ¶ 173.) Further, Plaintiffs allege that, because of Defendants' fraudulent concealment, "Plaintiffs are unable to discover the scope or extent of contamination." (*Id.* ¶ 174.) Based on these allegations, the court finds that Plaintiffs have sufficiently pleaded that they were induced to refrain from acting based on Defendants' fraudulent concealment and that valid claims may have been concealed.

Further, concerning damages, the Complaint states the following:

> [Plaintiffs'] rights to the use and enjoyment of their property are substantially and wrongfully being interfered with by the fear of, or threat of, contamination from Defendants' sites. Defendants' fraudulent concealment of the scope of contamination ... has caused and continues to cause Plaintiffs to be unaware of the scope of contamination from Defendants' UST's.... These uncertainties constitute an ongoing harm.

(*Id.* ¶ 173.) Further, "Plaintiffs are unable to discover the scope or extent of contami-

nation. As a result, Plaintiffs are at a substantial risk of imminent trespass and continue to face a nuisance interfering with their enjoyment and [ ] reasonable use [ ] of their property." (*Id.* ¶ 174.) Thus, Plaintiffs allege that the concealment caused damages.

Accordingly, the court finds that Plaintiffs sufficiently plead a cause of action for fraudulent concealment.

### 3. Whether Plaintiffs' Own Allegations Preclude Their Claim For Fraudulent Concealment

 Defendants contend that "plaintiffs cannot maintain claims that defendants have concealed a 'problem,' but then admit that this 'problem' has been well known for decades" because "[t]his contradiction renders the claim 'fatally defective.'" (Defs.' First Mem. at 25.) An examination of the Complaint demonstrates that Plaintiffs statements are not inconsistent.

Plaintiffs allege that Defendants acted to conceal "the widespread failures and imminent expected failures, of thousands of USTs nationwide." (Compl.¶ 155.) Defendants argue that this claim is contradicted by Plaintiff' further allegation that "as early as the 1970's, the alleged 'problems' of leaking [USTs] were recognized outside the industry." (Defs.' First Mem. at 24 (citing Compl. ¶ 88–101).) Defendants fail to explain why such allegations are inconsistent, and the court finds that they are not.

The fact that information about the UST leakage problem was made public in no way impacts on Plaintiffs' claim concerning whether Defendants attempted to tried to conceal it. Indeed, the Plaintiffs allege that many of Defendants' actions were taken in response to the publicizing of USTs' leakage problems. Additionally, Plaintiffs do not claim that they were aware of such information at the time it was released to the public; rather, they allege that the information was released within the indus-

try. Therefore, the court concludes that these allegations are not inconsistent and this claim is not rendered defective.

Defendants cite *Friendship Med. Ctr., Ltd. v. Space Rentals*, 62 F.R.D. 106 (N.D.Ill.1974) and *Gordon v. Matthew Bender & Co.*, 562 F.Supp. 1286 (N.D.Ill. 1983) in support of their position, but the court finds these cases to be readily distinguishable from the present case. In *Space Rentals*, the plaintiff stated in Count I that it made defendant an offer which defendant never accepted, and in Count II, that defendant accepted the offer. 62 F.R.D. at 111–112. Count II was *not* made in the alternative. The court found that "[s]uch inconsistency clearly prevents the defendant [ ] from properly responding to the instant complaint, and thus the instant Count I is fatally defective and should be dismissed." *Id.* at 112.

. In *Gordon*, the plaintiff, in the same count of the complaint, alleged that he and defendant entered into a commission agreement while also asserting quasi-contract claims based on the same subject matter. 562 F.Supp. at 1298–99. The court determined that, based on such contradictory allegations, plaintiff failed to state a claim. *Id.* In this case, as detailed above, Plaintiffs allegations are neither contradictory nor made in an inherently contradictory manner, as opposed to the allegations contained in *Space Rentals* and *Gordon.* Thus, the court finds *Space Rentals* and *Gordon* to be inapposite and therefore unpersuasive.

**E. Whether Plaintiffs State A Valid Conspiracy Claim**

■ "[T]he Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged." *Griswold v. Alabama Dep't of Indus. Relations*, 903 F.Supp. 1492, 1500–1501 (M.D.Ala.1995) (citation omitted). "[C]onclusory, vague, and general allegations of conspiracy may justify dismissal of a compliant." *Kearson v. Southern Bell*

*Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir.1985.) However, "[a] great quantum of detail need not be required to be alleged as to the formation of the conspiracy because of the clandestine nature of the scheme or undertaking engaged in. The existence of the conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action." *Eidson v. Olin Corp.*, 527 So.2d 1283, 1285 (Ala.1988). In light of the above, the court concludes that Plaintiffs have properly alleged a civil conspiracy claim under the law of each jurisdiction.

■ As with the elements of fraudulent concealment, the elements of a claim for civil conspiracy are essentially the same in each of the relevant jurisdictions. Those elements are: an agreement, between two or more persons, to accomplish either an unlawful end or a lawful end by unlawful means, resulting in damage to the plaintiff. *See, e.g., Haapanen v. Bogle*, 643 So.2d 547, 551 (Ala.1994); *Eidson*, 527 So.2d at 1285; *Raimi v. Furlong*, 702 So.2d 1273 (Fla.Dist.Ct.App.1997); *Demoulas v. Demoulas Super Mkts., Inc.*, No. 90–2927(B), 1995 WL 476772, at *98 n. 45 (Mass.Super. Aug.2, 1995); *Shaw v. Burchfield*, 481 So.2d 247 (Miss.1985).

■ It is apparent that Plaintiffs have pleaded with as much specificity as is possible at this early stage of the proceedings to satisfy the requirements of the four relevant jurisdictions. The Plaintiffs have alleged an agreement between two or more Defendants. They have sufficiently stated causes of actions for the claims underlying the conspiracy claims, to wit, trespass, nuisance, and fraudulent concealment. *See* §§ I.C. and I.D., supra.

As noted above, pleading "conspiracy" requires somewhat greater specificity than general notice pleading pursuant to Rule 8(a). This greater degree of specificity is required to provide Defendants sufficient notice to properly answer a Complaint and

prepare a defense. In this case, the Defendants have been provided as much information about Plaintiff's conspiracy theory as is currently possible, considering the ongoing and lengthy nature of the purported conspiracy and the fact that Defendants control almost all relevant documentation that would reveal the details of the conspiracy.

### F. Plaintiffs State A Valid Strict Liability Claim

Defendants contend that Plaintiffs fail to properly state a claim for strict liability, and that, even if properly alleged, their claim fails because the storage of gasoline is not an ultrahazardous activity as a matter of law. (Defs.' First Mem. at 35.) Plaintiffs reply that they allege all of the requisite elements, and that the storage of gasoline, especially under the circumstances of this case, may constitute an ultrahazardous activity. (Pls.' Resp. Part I at 58–64.) The court agrees with Plaintiffs.

The four relevant jurisdictions have each adopted the Restatement (Second) of Torts, §§ 519–524A, with regard to liability for abnormally dangerous activities. *See Sprankle v. Bower Ammonia & Chem. Co.*, 824 F.2d 409, 414 (5th Cir.1987) (applying Mississippi law); *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 101 (D.Mass.1990) (applying Massachusetts law); *Harper v. Regency Dev. Co.*, 399 So.2d 248, 252 (Ala.1981); *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So.2d 510, 512 (Fla.Dist.Ct.App.1984). The Restatement provides for strict liability for abnormally dangerous activities. *See* Restatement (Second) Torts § 519 (1976). To determine whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) Torts § 520. "In determining whether the danger is abnormal, the factors listed in Clauses (a) to (f) of this Section are all to be considered, and are all of importance." Restatement (Second) of Torts § 520 cmt. f. "[I]t is not necessary that each of [the factors listed in § 520] be present, especially if others weigh heavily." *Id.*

Plaintiffs allege the following in support of their strict liability claim:

At all relevant times, Defendants have used the sites as service station[s] or storage and distribution facilities. Petroleum products have leaked from the UST systems in such a manner that he contaminants discharged therefrom ... are likely to contaminate and pollute Plaintiffs' and/or adjacent properties, and will impact adversely on the safety, value, use, and enjoyment of Plaintiffs' properties. The storage and distribution of gasoline and other petroleum products in UST systems in densely settled areas, without sufficient monitoring and other equipment to immediately detect and contain leakage, together with the knowledge ... of the release of quantities of petroleum from such UST systems without attempting immediate and aggressive remedial activity to contain and clean up clearly contaminated soil and groundwater, as well as the failure to fully determine the extent of the contamination, all constitute abnormally dangerous activity which has created and continues to create an unreasonable risk of injury to Plaintiffs' interests and to the subject properties.

(Compl.¶ 170.)

The Defendants make specific arguments under the law of each of the rele-

vant jurisdictions concerning the strict liability claim. Defendants contend that, under Alabama law, Plaintiffs must allege that an activity cannot be safely performed (Defs.' First Mem. at 35), and they cite *E S Robbins Corp. v. Eastman Chem. Co.*, 912 F.Supp. 1476 (N.D.Ala. 1995), in support. The court finds, however, that whether an activity is incapable of being done safely is only one factor to be used in determining whether an activity is abnormally dangerous. As noted by Plaintiffs, the court in *E S Robbins* recognized that other factors must weigh in the analysis of whether an activity is abnormally dangerous. 912 F.Supp. at 1489–91.

Moreover, although Alabama law has limited the doctrine of strict liability "primarily to blasting cases," *E.S. Robbins*, 912 F.Supp. at 1489, the Alabama Supreme Court has not foreclosed its applicability in other arenas. *See Avery v. Geneva County*, 567 So.2d 282 (Ala.1990) (stating that whether an activity is abnormally dangerous is a question of fact for the jury).

Defendants also claim that, under Florida law, Plaintiffs have "failed to allege that any activity of Defendants was ultrahazardous." (Defs.' First Mem. at 35.) In paragraph 171 of their Complaint, however, Plaintiffs seek recovery for "Defendants' acts and omissions, including without limitation, the abnormally dangerous activities of. . . ." (Compl.¶ 171.) As Plaintiffs rightly contend, their allegation of "abnormally dangerous activities" is tantamount to alleging "ultrahazardous activities."[6] *See, e.g., Sprankle*, 824 F.2d at 414.

Next, Defendants again argue that Plaintiffs claim must fail because of the purported failure to allege physical contact or damage. (Defs.' First Mem. at 35–36.) The Restatement provides for consideration of, inter alia, "[the] existence of a high degree of risk of some harm to the

... land [and the] likelihood that the harm that results from it will be great." Restatement (Second) Torts § 520. The Restatement does not require physical contact or damage, and Defendants fail to provide any authority containing such requirement. Indeed, Defendants cite *Great Lakes Dredging & Dock Co. v. Sea Gull Operating Corp.*, 460 So.2d 510 (Fla.Dist. Ct.App.1984), as authority. *Great Lakes* states that strict liability will apply only if the ultrahazardous activity "poses some physical . . . *danger* to persons or property in the area, which danger must be of a certain magnitude and nature," *Id.* at 460 (emphasis added); *Great Lakes* does not require that the contact be present.

Concerning Mississippi law, Defendants contend that "Mississippi law does not impose strict liability for the storage of even hazardous substances." (Defs.' First Mem. at 36.) In support of this argument, Defendants cite *Sprankle*, 824 F.2d 409. *Sprankle*, however, does not stand for that proposition; rather, the Fifth Circuit in Sprankle held that the storage of ammonia "under the circumstances of this case does not constitute an abnormally dangerous, or ultrahazardous, activity." *Id.* at 416.

Finally, concerning Massachusetts law, Defendants contend that Plaintiffs do not state a claim for strict liability under Massachusetts law because they have not alleged an invasion of their properties and because they cannot establish that the storage of gasoline is an "unusual and extraordinary" use of property. (Defs.' First Mem. at 36.)

As previously noted, the Restatement does not require actual invasion. *See* Restatement (Second) Torts § 520. In addition, whether the element of an "unusual and extraordinary" property use has been met, which would be required to support a strict liability claim under Massachusetts law, is a matter for the factfinder to decide

---

**6.** Defendants do not argue that those jurisdictions that use the term "ultrahazardous activity" as opposed to "abnormally dangerous activity" are somehow speaking of a different element under the doctrine of strict liability.

in light of the facts and circumstances of this case. *See Curran v. Massachusetts Turnpike Auth.*, No. 923002A, 1994 WL 879685 at *4 (Mass.Super. June 6, 1994); *see also Wellesley Hills*, 747 F.Supp. at 101 (stating that "Mobil's operation of the gas station qualifies as an abnormally dangerous activity, that the risk of release of oil is precisely what makes operation of a gas station abnormally dangerous, and that such contamination of property constitutes harm to the property").

Thus, the court finds that Plaintiffs sufficiently plead a cause of action for strict liability, and Defendants' Motion To Dismiss this claim is due to be denied.

### G. Whether Plaintiffs Sufficiently Plead Negligence And Gross Negligence Claims

Defendants claim that Plaintiffs' negligence and gross negligence causes of action fail to state a claim because Plaintiffs "have not alleged any compensable damages proximately caused by a breach of duty by any particular defendant." (Defs.' First Mem. at 33.) Defendants contend that "the Complaint does not specify any damages whatsoever that the named plaintiffs allegedly incurred ... the named plaintiffs allege concern and fear and possibly diminution in property values due to alleged proximity to contamination." (*Id.* at 34.) Defendants also contend that "the Complaint does not allege any specific damage to any named plaintiff." (*Id.* at 35.) The court disagrees with Defendants.

In their negligence and gross negligence causes of action, Plaintiffs claim that, because of Defendants' negligence and gross negligence, "substantial quantities of petroleum hydrocarbons ... were discharged into the soil and the groundwater adjacent and/or nearby to Plaintiffs' properties" (Compl.¶ 163), and these "hydrocarbon releases ... have and continue to contaminate and pollute soil and groundwater which is presently close to and/or upon Plaintiffs' properties." (*Id.* ¶ 165.) Further, Plaintiffs allege that:

[a]s a result of said contamination and pollution present upon and migrating from Defendants' sites, the use and value of Plaintiffs' properties for current and future economic purposes has materially and substantially decreased. Plaintiffs have suffered a serious, substantial and unreasonable interference with the use, comfort and enjoyment of their properties.

(*Id.* ¶ 166.) Based on the above, the court determines that Plaintiffs have sufficiently alleged compensable damages proximately caused by breach of duty by Defendants.

Moreover, the court concludes that Defendants' arguments concerning the specificity of Plaintiffs' allegations also fail at this time. As discussed above, the Federal Rules of Civil Procedure generally allow for liberal pleadings. Fed.R.Civ.P. 8(a); *see also* § I.A., supra. The court has already determined that Plaintiffs' general use of the term "defendants" is sufficient and does not warrant dismissal. *See* § I.A., supra.

The court further determines that Plaintiffs' allegations are adequate to overcome Defendants' argument that "the Complaint does not allege any specific damage to any named plaintiff." Plaintiffs seek to bifurcate the above-styled action, with Phase I to focus solely on injunctive relief. *See* § I.C., supra. Monetary damages would be addressed only in Phase II of the litigation. The court notes that some class members may not be able to prove injury and, therefore, may not be entitled to monetary damages, but that issue does not and should not require dismissal of this action at this stage. During discovery, the Defendants may fully develop the issue the Plaintiffs' damages. Therefore, in light of this fact as well as the liberal pleading rules, the court concludes that Plaintiffs' negligence and gross negligence claims withstand Defendants' Motion To Dismiss.

### H. Whether Plaintiffs Have Standing To Pursue Their Claims

Defendants contend that Plaintiffs lack standing to bring their claims, as they fail

to plead facts sufficient to demonstrate that they have personally been injured. (Defs.' First Mem. at 13–14.) The court finds that Plaintiffs have standing.

█ Article III of the Constitution restricts the jurisdiction of the federal courts only to those disputes in which there is an actual "case" or "controversy." *See Raines v. Byrd,* 521 U.S. 811, 117 S.Ct. 2312, 2317, 138 L.Ed.2d 849 (1997). An essential element of the case-or-controversy requirement is that Plaintiffs have standing to sue. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Allen v. Wright,* 468 U.S. 737, 750–51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The question of standing is the threshold question in every federal case. *See Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

█ To meet the standing requirements of Article III, Plaintiffs must allege "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines,* 117 S.Ct. at 2317 (quoting *Allen,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 474–75, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)). The alleged injury must be "distinct and palpable," and not "abstract," "conjectural," or "hypothetical." *Allen,* 468 U.S. at 751, 104 S.Ct. 3315 (citations omitted). To satisfy the "case or controversy" requirement, "the plaintiff must show that he 'has sustained, or is in immediate danger of sustaining, some direct injury' as a result of the challenged official conduct." *United States v. Southern Fla. Water Management District,* 28 F.3d 1563, 1571 (11th Cir.1994) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)). It is well-settled that the party invoking the federal court's jurisdiction bears the burden of establishing these three elements. *See United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995); *Lujan,* 504 U.S. at 561, 112 S.Ct. 2130; *Warth,* 422 U.S. at 518, 95 S.Ct. 2197.

Defendants claim that an actual injury must be alleged for a plaintiff to have standing and cite *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), in support thereof. In *Simon,* the plaintiffs alleged no injury to themselves, as they were organizations "dedicated to promoting access of the poor to health services." *Simon,* 426 U.S. at 39–40, 96 S.Ct. 1917. Accordingly, they alleged that they had standing based on their status as representatives of a class that had been injured in fact. *Id.* at 40, 96 S.Ct. 1917. The Supreme Court rejected their argument, stating that "[o]ur decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Id.*

█ In contrast, Plaintiffs here allege that they have been injured through direct contamination or the threat of direct contamination, as demonstrated above. (Compl.¶¶ 83, 135, 137.) The rationale of *Simon* is inapposite to the instant case because here Plaintiffs allege injury to themselves, rather than solely on behalf of others. The Plaintiffs have sufficiently alleged an injury in fact.

## II. THE ARGUMENTS SET FORTH IN DEFENDANTS' SECOND MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO DISMISS ARE PROPERLY CONSIDERED ON SUMMARY JUDGMENT

█ In their Second Memorandum, Defendants have set forth in detail numerous additional arguments as grounds for the dismissal of this action. (*See* Defs.' Second Mem.; Defs.' Second Reply.) Briefly, Defendants contend that the court

does not have the authority to adjudicate this matter, it is not feasible to grant the relief requested, the adjudication of this matter would interfere with state and federal regulatory schemes that are already in place, and the adjudication of this matter would violate the separation of powers. (*See* Defs.' Second Mem.; Defs.' Second Reply.) Plaintiffs, in turn, have responded to each of Defendants' arguments. (*See* Pls.' Resp. Part II.)

The issue of relief is a serious matter. However, it would be absolutely premature to dismiss this case at this stage because of the imprecise nature of the relief. The court has previously noted that the Plaintiffs have made allegations which, if proven, would entitle them to some form of injunctive relief. The precise scope of that relief is not required at this stage, and the lack of a precise scope is not grounds for dismissal.

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that Defendants' Joint Motion to Dismiss, filed March 3, 1998 (Doc. # 231), be DENIED.[7]

## ORDER

The clerk of the court is ORDERED to file the Recommendation of the Magistrate Judge and to serve by mail a copy thereof on the parties to this action. The parties are DIRECTED to file any objections to the said Recommendation within a period of thirteen (13) days from the date of mailing to them. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

March 21, 1999.

---

7. The court will issue Recommendations on the other pending Motions To Dismiss following the decision of the District Judge on this Recommendation.